BELLE BRICKELL and MAUDE E. BRICKELL, Single Women, Petitioners, v. ELIZABETH DIPIETRO, by Her Next Friend, Her Husband, PIETRO DIPIETRO, Respondent.

198 So. 806

Division B

Opinion Filed October 8, 1940

On Petition for Rehearing November 26, 1940

24

*Stapp, Ward & Ward,* for Petitioners;

*Morrow & Mayes,* for Respondents.

CHAPMAN, J.—On October 27, 1938, Elizabeth DiPietro, by her husband and next friend, Pietro DiPietro, filed in the Circuit Court of Dade County, Florida, her bill of complaint seeking a partition and other relief against Belle Brickell, Maude E. Brickell, and other defendants of the Brickell family. It was alleged therein that Mary Brickell, on January 13, 1922, was seized and possessed in fee simple of certain described real estate situated in Dade County, Florida, and that Mary Brickell died testate and her last will and testament was admitted to probate in the County Judge's Court of Dade County on January 21, 1922. The property involved in this suit was, in part, the homestead of

Mary Brickell and pertinent portions of her last will and testament are, viz.:

"Item 4. I designate my home place or residence at Brickell Point, Dade County, Florida, with all the furniture and furnishings therein contained, together with the land attached and belonging thereto, as a homestead, and I desire and direct that the same be retained as a home for my unmarried children as long as they or any of them may live and remain unmarried, and my executors, hereinafter named, are hereby directed to maintain said premises, as hereinafter provided, out of the funds or income of my estate during the period as above mentioned. At the expiration of the period named for the maintenance of the same as a homestead, it is my will, and I hereby direct, that the said homestead premises shall be disposed of by my executors, hereinafter named, in the same manner as the other real property belonging to my estate is herein directed to be disposed of. The Homestead property referred to is more particularly described as follows, to-wit:" (Description omitted.)

"Item 5. All the rest, residue and remainder of my estate, real, personal and mixed, of which I may die possessed, remaining after the payment of my just debts, funeral expenses and expenses of administration, and not herein otherwise well and effectually disposed of, I devise and bequeath to and direct that the same shall be distributed share and share alike to my five remaining children. . . ."

"Item 6. The executors of this, my last will and testament, hereinafter named, are hereby given full and complete power and authority to collect all interest and dividends, rents and all other income and profits of every character arising from my said estate, real, personal or mixed, and to sell from time to time, when and in such manner as they may deem for the best interest of the said estate, such

portion or portions of the real estate and personal property as their judgment may dictate, without being required to obtain therefor an order of any court, and, after paying from the proceeds of such income and sales the current expenses of administration, taxes, assessments, and all lawful charges against the said estate, including the maintenance of the home place, the family burial ground, approaches and grounds appurtenant thereto, as well as the expenses incident to keeping the property of the estate insured and in proper repair . . ."

"Item 7. It is my desire and I hereby direct that the family burial ground located upon my homestead tract, and referred to in Item Four (4) of this my last will and testament, shall forever be held and maintained, and kept sacred as a family burial ground for those already interred together with myself and such unmarried children of mine as desire to be buried there, and my executors, hereinafter named, are hereby authorized and directed to have the same carefully looked after and maintained, expending such sum or sums annually as may be necessary to keep the burial plot, and roads of ingress and egress, as well as such grounds appurtenant thereto . . ."

"Item 9. By this my last will and testament I have disposed of my estate after due consideration of the respective needs and rights of all persons . . ."

"Item 11. I hereby appoint my daughter, Maude E. Brickell, of Miami, Florida, and Frank Clark, of Gainesville, Florida, as executors of this my last will and testament, and I hereby give to and invest them, and their successors with such powers over and such title to and estate in the property in this will devised and bequeathed as may be necessary or convenient to carry into full effect my intentions and designs in the execution of this will, and the

several devises, donations and legacies herein specified and made, . . ."

On November 15, 1923, the heirs at law and devisees of the said Mary Brickell entered into an agreement with the executors named in the last will and testament of Mary Brickell whereby the said devisees and heirs purported to cancel the duties and charges of the testatrix set out in her last will and testament. The heirs of the late Mary Brickell, by warranty deed, conveyed their interest in and to the lands described in the bill of complaint to Belle G. Brickell, Maude E. Brickell and Alice A. Brickell. The other heirs, viz.: George M. Brickell, William B. Brickell and Charles C. Brickell, in consideration of releasing and conveying their interests to their said sisters, took other property by lawful conveyance, and copies of each of these said conveyances are attached to the bill of complaint and by appropriate allegations made a part thereof. The effect of said conveyance, it is alleged, placed the fee simple title in Alice Brickell, Maude Brickell and Belle Brickell and each owned a one-third undivided interest in the lands therein described.

On September 12, 1924, Alice Brickell died intestate, leaving heirs at law surviving, viz.: William B. Brickell, Maude E. Brickell, Belle G. Brickell, George M. Brickell, and Charles C. Brickell, who succeeded to the right in the estate of the late Alice A. Brickell. On September 6, 1931, William B. Brickell died testate and his wife, Olive B. Brickell, by the terms of his last will and testament, succeeded to the rights and estate of William B. Brickell as an heir at law of the late Alice A. Brickell in and to the real estate described.

On February 5, 1930, Maude E. Brickell was adjudged a bankrupt in the United States Court for the Southern District of Florida and trustees were appointed, and on June

3, 1933, the trustees in bankruptcy of the estate of Maude E. Brickell sold all the rights, title and interest of the trustees in and to the said property to Elizabeth DiPietro. The report of the sale as made by the trustees was confirmed on June 5, 1933, by an order of the United States District Court, and on the same date the trustees of the estate of Maude E. Brickell executed and delivered a trustee's deed to Elizabeth DiPietro conveying their rights, title and interest in and to the property and the said deed was recorded in Deed Book 1535 at page 133, appearing in the office of the Clerk of the Circuit Court of Dade County, Florida. The interests of the respective parties to the suit in and to said property is described and set forth in the bill of complaint.

The prayer of the bill is for: (a) appointment of a receiver; (b) an accounting; (c) a division or partition of the interests of the respective parties in and to the property described in the bill of complaint.

On December 8, 1938, Maude E. Brickell and Belle G. Brickell through counsel filed a motion to dismiss the bill of complaint on grounds, viz.: (a) there is no equity in the bill; (b) the bill of complaint shows that the title to the property sought to be partitioned is held in an irrevocable trust; (c) there is no relation of co-tenant or joint ownership entitling the plaintiff to a partition of the interests of the respective parties; (d) the purchase of the interest of Maude E. Brickell and the acquisition of a trustee's deed to the alleged interest failed to convey such an interest as would authorize the maintenance of said partition suit; (e) the alleged conveyance to the plaintiff of Maude E. Brickell's interest through bankruptcy proceedings is insufficient in law to entitle the plaintiff to maintain said suit.

The lower court heard extensive arguments on the motion to dismiss the bill of complaint and on the 4th day of June, 1940, made and entered an order overruling and denying the

motions to dismiss and require the parties to file their answers to the bill of complaint on or before the rule day in July, 1940.

Maude E. Brickell and Belle G. Brickell, defendants below, on July 27, 1940, filed in this Court their petition for a writ of certiorari seeking a review on the part of this Court of the order of the Circuit Court of Dade County, Florida, dated June 4, 1940, overruling and denying their motion to dismiss the said bill of complaint. On July 27, 1940, Fannie Brickell, a widow, James Bain Brickell and wife Allegra Brickell, filed in this Court their petition for leave and authority to intervene in said cause, and on August 2, 1940, this Court entered its order treating the petition to intervene as an appearance of said parties on appeal in said cause and by the terms of the order they were permitted and allowed to file briefs.

In the brief of counsel in support of the petition for writ of certiorari in this Court, the first question posed for a decision is, viz.:

"If the provisions of a will considered in the light of surrounding circumstances show that a testatrix intended to and did affirmatively create a trust for the purpose of maintaining a residence as a home for her unmarried daughters until they all married or all died and charged the executors and trustees with the duty of maintaining said home out of the assets of the entire estate and coupled said trust on the home with that of a family burial ground adjacent thereto and as part of the general description and provided for the disposition of the home place after all the unmarried daughters either married or all died, can the trust be terminated after the death of the testatrix by the beneficiaries without the consent of the court of equity and directly in violation of the evident intent of the will of the testatrix?"

It is asserted that the motion to dismiss the bill of com-

plaint presented squarely in the lower court the question, *supra*, and that the same was by the court below decided adversely to the contention of counsel for petitioners when the motion to dismiss as made by the defendants below and petitioners here was overruled and denied. Another phase of this case was considered and ruled upon by this Court in the case of Langford, *et al.*, as Trustees v. Brickell, 103 Fla. 672, 138 So. 75.

Item 4 of the will, *supra*, provides, among other things, "my home place or residence at Brickell Point . . . with all the furniture and furnishings therein contained, together with the land attached thereto, I desire and direct that the same be retained as a homestead . . ." It is clear that the testatrix by said will and testament did not attempt directly or indirectly, or by any reasonable inference that could be drawn therefrom, to dispose of the homestead property. Counsel for the respective parties here do not claim or assert that the testator by her last will and testament disposed of or attempted to dispose of the homestead on which she resided with her children. The law is well settled in Florida that a homestead is not subject to testamentary distribution. See Wilson v. Fridenberg, 21 Fla. 386; Seull v. Beatty, 27 Fla. 426, 9 So. 4; Brokaw v. McDougall, 20 Fla. 212; Walker v. Redding, 23 So. 565, 40 So. 124; Caro v. Caro, 45 Fla. 203, 34 So. 309; Palmer v. Palmer, 47 Fla. 200, 35 So. 983; Griffin v. Griffin, 59 Fla. 512, 52 So. 609, 139 Am. St. Rep. 138, 21 Ann. Cas. 246; Parker v. Penny, 95 Fla. 922, 117 So. 703; Moore v. Price, 98 Fla. 276, 123 So. 768; Mullan v. Bank of Pasco Co., 101 Fla. 1097, 133 So. 323.

Counsel for petitioners contend that the testatrix, Mary Brickell, by the terms of her will, created or established a trust for the purpose of maintaining a home for certain of her unmarried children and that the trust so created or estab-

lished in their behalf could not be terminated after the death of the testatrix by the voluntary action of the legatees and devisees without obtaining an order of approval on the part of a court of equity. In support of this conclusion the case of *In re:* Winthrop's Estate, 6 N. Y. S. (2d) 539, 168 Misc. 861, is cited, in which it was held that the wishes of the party creating the trust are the controlling factors to be considered by the court rather than the ingenuity and desire of the beneficiaries thereof to circumvent the terms and conditions of the trust. We find no fault with this holding.

The case of Shelton v. King, 229 U. S. 90, 57 L. Ed. 1086, 33 S. Ct. 686, cited by counsel for petitioners, was a suit filed in equity to terminate a trust under the will of Anna Smith Mallett, and the material clauses of the will are, viz.:

" '3. I give, bequeath and devise to Jean Louisa, Anna Gertrude, and Robert Philo Shelton, being the children of my cousin John Consider Shelton, deceased, all of Bridgeport, Connecticut; the sum of Seventy-five Thousand dollars, being Twenty-five Thousand to each.

" '10. I give, bequeath and devise all the rest, residue and remainder of my estate, real and personal wheresoever and whatsoever, of which I may die possessed to the aforesaid Jean Louisa, Anna Gertrude, and R. Philo Shelton.

*"Codicil*

" '. . . In addition to Frank B. King, whom I have appointed .executor of this, my last will and testament, I wish to appoint Wm. H. Saunders, of the firm of Wm. H. Saunders & Co., 1407 F Street, Northwest, and George W. White, Paying Teller of the National Metropolitan Bank, co-trustees with the said F. B. King,—to hold in trust the legacies devised to Jean Louisa, Anna Gertrude and Robert Philo Shelton,—said trusteeship to terminate when these legatees shall receive their portions of my estate.

" 'And it is my further will that these legacies to the said Jean Louisa, Anna Gertrude, and Robert Philo Shelton, shall be paid in full when the said Robert Philo Shelton shall reach the age of twenty-five years.' "

The court upheld the trust created by the testator and stated that "there is no higher duty which rests upon a court than to carry out the intentions of a testator when the provision is not repugnant to settled principles of public policy and is otherwise valid." The case of Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254, has been carefully considered.

Counsel cites Muldoon v. Trewhitt (Tenn.), 38 S. W. 109, which was a partition suit on the part of a creditor who obtained a claim or interest of a devisee under a will which provided, in part:

"The home property, where I live, and the lot adjoining on the northeast, and the west one-half of the Chambliss lot, opposite my residence, I give and bequeth to my wife, Mary M. Trewhitt, for and during her natural life, for the joint use and benefit of herself and her four children, A. H., Alonzo S., P. W., and Ellen C. Trewhitt, the fee simple title to all said property to go to said four children, share and share alike."

The court sustained a demurrer and dismissed the partition suit on the theory that the creditor plaintiff acquired the interest of the devisee under the will and such interest as passed thereby was not ascertainable. The interest of the widow under the trust was for the joint use and benefit of *all* the children and that she held no interest that could be disposed of that would entitle the purchaser thereof to the possession or to maintain a partition suit.

Counsel contend that the case at bar should be ruled by the case of Jones v. Harrison, 7 Fed. (2d) 461. The facts of the two cases, it is asserted, are similar or identical. This suit was brought by a trustee in bankruptcy to sequester

for the benefit of creditors the interests of the bankrupt devisee in a certain trust created by a will on the part of the father of the bankrupt. Material facts and terms of the will are, viz.:

"In September, 1911, John T. Ready, tne bankrupt's father, made his will. After providing for numerous personal bequests he bequeathed to the bankrupt, his only son, in fee simple, nearly all his estate. This included two dwelling houses in Sedalia, Mo., and other property in Greenfield, in that State, and a considerable body of land. This property is given to the bankrupt absolutely. By the sixteenth and seventeenth paragraphs of the will the testator creates a trust to hold certain notes and mortgages, and 50 shares of stock in the Dade County Bank. The declaration of trust empowers the trustee to collect the interest and principal of the notes and mortgages, and the dividends on the stock. It authorizes them to reinvest funds not needed to carry out the trust in real estate securities in Dade County, Mo., and gives specific directions on that subject. This part of the will further provides that the income from the trust estate shall be first used to pay the expenses of the trust and taxes thereon, and on certain real estate bequeathed to the son, with a few other minor items."

The court, in holding that the trust funds going to the bankrupt devisee could not be reached to satisfy the claims of his creditor, in part said (text page 463):

"The power of a testator to provide by a trust for the future welfare of a beneficiary, and yet place the interest granted beyond his power to alienate or incumber, or his creditors to seize, has been a matter of slow growth. It first appeared in settlements for married women, for the purpose of placing the wife's separate estate beyond her own power and beyond that of her husband. After much hesitation in the English courts, and by the aid of some

statutory provisions, the rights of a married woman in her separate estate were finally fully safeguarded. Those courts, however, have steadfastly refused to grant the same immunity to the interest of a beneficiary in ·a trust. The question was finally put to rest in 1811, in the case of Brandon v. Robinson, 18 Vezey, 429. The only way under the English decisions that a trust can be saved is to terminate it, in case restrictions are violated. It became the settled doctrine of those courts, as stated by Gray in his Restraints on Alienation, that 'whatever a man can demand from his trustees, that his creditors can demand from him.' (Page 151.)

"At a comparatively recent date American courts adopted a more liberal rule, enabling the testator to protect his gift until it is actually paid over to the beneficiary. The leading authority, Nichols v. Eaton, 91 U. S. 716, 23 L. Ed. 254, was ·decided in 1875. This was followed by the Supreme Judicial Court of Massachusetts in Broadway Natl. Bank v. Adams, 133 Mass. 170, 43 Am. Rep. 504, in 1882, and by the Supreme Court of Missouri in 1888, in Lampert v. Haydel, 96 Mo. 439, 9 S. W. 780, 2 L. R. A. 113, 9 Am. St. Rep. 358."

See DeLadson v. Crawford, 93 Conn. 402, 106 Atl. 326; Maher v. Maher, 207 Ky. 360, 269 S. W. 287; Perabo v. Gallagher, 241 Mass. 207, 135 N. E. 113; Cuthbert v. Chauvet, 136 N. Y. 326, 18 L. R. A. 745, 32 N. E. 1088; Robbins v. Smith, 72 Ohio St. 1, 73 N. E. 1051; Baughman's Estate, 281 Pa. 23, 126 Atl. 58; Will of Hamburger, 185 Wis. 270, 201 N. W. 267, 37 A. L. R. 1413. This rule was approved by this Court in the case of Byers, Exr., v. Beddow, 106 Fla. 166, 142 So. 894.

In the construction of wills this Court has held that the polar star to guide a court in reaching a conclusion is the intention of the testator. See Russ v. Russ, 9 Fla. 105. It

is the duty of the court to give effect to the intention of the testator where it can be ascertained and determined from the four corners of the will. See State v. Beardsley, 77 Fla. 803, 82 So. 794. It is the intention which the testator expresses in his will that controls. See Rewis v. Rewis, 79 Fla. 126, 84 So. 93. The whole instrument should be considered by the court in determining the intention of the testator as expressed in his last will and testament. See Lowrimore v. First Savings, etc., Co., 102 Fla. 740, 140 So. 887; Wallace v. Wallace, 118 Fla. 844, 160 So. 377; Musgrove v. Mach, 133 Fla. 459, 182 So. 786.

It was not the intention of Mary Brickell, as expressed in her last will and testament, to make testamentary disposition of her homestead, but to provide the home occupied by her at the time of making the will and at the time of her demise "for my unmarried children as long as they or any of them may live and remain unmarried," and the executors were charged by the testator in the will to maintain said place as a home and all the costs were to be paid out of the funds or income of the estate during the period the home was being maintained for testator's unmarried children. The homestead was directed to be sold by the executors after it was *not* used by certain unmarried children as a home. The record shows that the home was discontinued and the homestead conveyed by mutual consent of the devisees.

In the cases cited by counsel for petitioners the trusts were created and fully established. We are unwilling to hold, after a careful study of the will now before us, that a provision for the maintenance of a home for designated devisees, and the costs incident thereto to be paid out of the funds of the estate, was in law a trust that could not be discontinued without a court order or that the devisees or legatees could not discontinue it by mutual consent. The

rule adopted by this Court to be applied to the will now before us was clearly expressed by Mr. Justice WHITFIELD in the case of Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 So. 318, viz. (text page 836) :

"In order to create an express trust, the subject, object and terms of that trust must be definitely stated by competent authority; and in order to be enforced by judicial proceedings, the trust must be evidenced as may· be required by law. Where the declaration or creation of an express trust in lands is by statute required to 'be manifested and proved by some writing signed by the party authorized by law to declare or create such trust,' the subject, object and terms of the trust must be definitely expressed in a writing executed by an authorized party as the statute provides, or the trust cannot be provided for judicial enforcement. See 39 Cyc., pp. 44, 53, 57; Lines v. Darden, 5 Fla. 51; Floyd v. Smith, 59 Fla. 485, 51 South. Rep. 537, 1 Perry on Trusts (6th ed.), Sec. 79, *et seq.*" See Axtel v. Coons, 82 Fla. 158, 89 So. 419.

Other questions are posed for a decision ·in the case at bar, but we have concluded that a decision thereof on the part of this Court is unnecessary when we hold that a trust was not created by the terms of the last will and testament of Mary Brickell that required a court order to discontinue and that the devisees had the legal right and authority to convey the property involved as shown by the different conveyances appearing in the record. Excellent briefs have been filed in which each detail of the controversy has been ably presented. The homestead rights of Maude E. Brickell in and to the property here involved, if any, have not been presented to or determined ·by this Court.

We fail to find error in the order complained of and the petition for a writ of certiorari is hereby denied.

WHITFIELD, P. J., and BROWN, J., concur.

Buford, J., concurs in opinion and judgment.

Chief Justice Terrell and Justice Thomas not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### On Petition for Rehearing

A Writ of Certiorari to the Circuit Court for Dade County, Paul D. Barns, Judge.

*Stapp, Ward & Ward,* for Petitioners;

*H. Pierre Branning* and *Cecil C. Curry,* for Fannie Brickell, a widow, and James Bain Brickell, and Allegra K. Brickell, his wife, Respondents;

*Morrow & Mayes,* for Elizabeth DiPietro, by her next friend, her husband, Pietro DiPietro, Respondents.

Per Curiam.—In the petition for rehearing, filed by the petitioners for writ of certiorari, it is stated that the court predicated its opinion upon the following statement contained therein: "The homestead was directed to be sold by the executors after it was not used by certain unmarried children as a home. The record shows that the home was discontinued and the homestead conveyed by mutual consent of the devisees."

It is further stated in the petition that the application for writ of certiorari, made in accordance with a rule of this Court, was directed to an order of the lower court overruling a motion to dismiss the bill of complaint, and that the above quoted statement in the Court's opinion was not founded upon any allegation contained in the bill of complaint or the exhibits thereto, but, to the contrary, paragraph 16 of the bill of complaint, page 11 of the transcript of record, shows that the plaintiffs affirmatively allege that the petitioners for the writ, Belle Brickell and Maude E. Brickell, single women, still reside on the said premises and that they have at all times refused the plaintiff possession and

refused to give the plaintiff any accounting, and that no-where in the bill is there any allegation of fact that the home was discontinued.

There seems to be no complaint as to the correctness of the first sentence quoted from the Court's opinion. It is not questioned that Mary Brickell, in her will, directed that her home place on Brickell Point should be retained as a home for her unmarried children "as long as they or any of them may live and remain unmarried," and that at the expiration of the period named for the maintenance of the same. "as. a homestead" the will directed that said premises should be disposed of by testator's executors in the same manner as the other real property belonging to the estate was directed to be disposed of.

The real complaint therefore is based upon the statement in the opinion that "the record shows that the home was discontinued and the homestead conveyed by mutual consent of the devisees." It is contended that this statement is not supported by the allegations of the bill and that the court must have taken the allegations of the cross bill and the answer into consideration in arriving at said statement; that the allegations of the cross bill and answer are not admitted by the petitioners, and that no opportunity has been granted to these appellants to refute the allegations of the answer and cross bill filed as a part of the record in the Supreme Court by the defendants Fannie Brickell, *et al.,* and that no rule of procedure has been fixed by this Court by which these petitioners for writ of certiorari could file a reply brief to the briefs filed in behalf of the defendants Fannie Brickell, *et al.,* with reference to said answer and cross bill.

Undoubtedly, under our rule, by which a plaintiff or defendant may by certiorari obtain a decision by this Court on the correctness of an order of the Circuit Judge granting or denying a motion to dismiss a bill for want of equity,

this Court should only consider the sufficiency of the bill itself to state a cause for equitable relief, being the question raised by the motion to dismiss and the order of the trial court either denying or granting said motion. The purpose of the rule was to afford a more prompt method for securing a decision by this Court on interlocutory orders and appeals, and thus speed up the disposition of equity cases in the circuit courts. The Court had no intention of departing from this rule when the opinion in this case was written. The petitioners for writ of certiorari in this case properly filed in this Court a transcript of the record containing copy of the bill and exhibits, the motion to dismiss the bill and the order of the chancellor denying the motion to dismiss. The Court denied the petition of Fannie Brickell, *et al.*, who were named as defendants to the bill, for leave to intervene in this Court, but permitted their counsel to file an appearance for them in this Court and also a brief. However, no order was entered by this Court on the petition for leave to file a supplemental transcript containing a copy of said answer and cross complaint. The Court has realized all along that the only questions which it was called upon to consider were those raised by the petitioners, Belle Brickell and Maude E. Brickell, in the court below, by their motion to dismiss the bill and the chancellor's order denying the motion, and that the determination of these questions rested upon the petition for writ of certiorari and the transcript accompanying same, which transcript contained certified copies of the bill, the motion to dismiss and the trial court's order denying said motion.

The statement in the Court's opinion to the effect "that the home was discontinued and the homestead conveyed by mutual consent of the devisees" was an inference drawn by the Court from the allegations of the bill and the exhibits to the bill. The bill showed that each and all of the heirs

of Mary Brickell conveyed their respective several interests in the property, referred to as a "homestead," to Maude E. Brickell, Frank Clark and William B. Brickell, as executors and trustees under the will of Mary Brickell, and that such executors and trustees in turn promptly conveyed the property to the three unmarried daughters of Mary Brickell, namely, Alice A. Brickell, Belle G. Brickell and Maude E. Brickell, thereby vesting the fee simple title in the three single daughters. This was in November, 1923. Subsequently, September 12, 1924, Alice Brickell died intestate. Thus in 1923 "the homestead" was conveyed by the mutual consent of the heirs and devisees to the three unmarried daughters, one of whom died in 1924 and one of the others, Maude E. Brickell, was adjudged a bankrupt in 1930 and all her right, title and interest in and to said property was sold on June 3, 1933, and the same confirmed by an order of the United States District Court, and the trustees in bankruptcy delivered a deed to the purchaser, Elizabeth Di-Pietro, on June 5, 1933. While we inferred from this that the home had been discontinued, as stated in our opinion, the record does not positively show that the petitioners Belle Brickell and Maude E. Brickell ever actually vacated or abandoned said home place or that it was *discontinued* as a home. To that extent our former opinion, wherein it was stated that "the home was discontinued" may be considered as deleted from the opinion. However, this does not cause us to change the conclusions which we reached in our former opinion, wherein we held that "a trust was not created by the terms of the last will and testament of Mary Brickell, that required a court order to discontinue it, and that the devisees had the legal right and authority to convey the property involved as shown by the different conveyances appearing in the record," and that the petition for writ of certiorari should accordingly be denied. On the facts al-

leged in the bill, considered in connection with the exhibits attached thereto we see no reason to change our former conclusion that no error was committed by the chancellor in denying the motion to dismiss the bill.

Petition for rehearing denied.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Chief Justice TERRELL and Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.