200 So.2d 547 (1967)
In re ESTATE OF Robert C. SMITH, Deceased.
No. 7284.
District Court of Appeal of Florida. Second District.
June 16, 1967.
*548 D.J. Bradshaw, of Bradshaw & Edwards, Inverness, and W.B. Hunter, Tavares, for appellant.
Robert Stebbins, of Stebbins & Stebbins, and Harry E. Gaylord, Eustis, for appellees.
PIERCE, Judge.
This is an appeal in the above estate matter by the Executrix, June F. Creighton, from an order entered on June 8, 1966, by the County Judge of Lake County, *549 Florida, which order, among other things, required the Executrix to make final distribution to the residuary beneficiaries named in decedent's Will of all remaining assets of the estate, including certain described real property which had been previously conveyed by the Executrix to a third party grantee.
Robert C. Smith, a resident of Lake County, Florida, died on March 31, 1963, and his will was admitted to probate on April 17, 1963, by the County Judge of said County. Said Will, which was dated December 11, 1961, after making the usual provision for his burial and payment of debts and funeral expenses, bequeathed and devised 
"* * * all my estate, of whatever nature and whereever situate, both real, personal and mixed, in equal shares, share and share alike, to Dorothy Watkins of Oak Park, Illinois, and Alice Timmer of Maywood, Illinois, to be and become their property in fee simple absolute."
The Will also named 
"* * * June F. Creighton as Executrix of this my Last Will and Testament and * * * direct that she shall have power to dispose of any of my property and to execute all instruments of conveyance therefor without order or confirmation of any court or courts."
On April 13, 1966, the County Judge entered order approving the Executrix's "last partial accounting", directing payment of her attorney's fee and her own fee as Executrix, and then ordering 
"* * * that upon payment of said costs of administration and final court costs, said Executrix shall distribute to the two beneficiaries under the last Will and Testament of the said Robert C. Smith, to-wit: Alice Timmer and Dorothy Watkins the remaining assets of said Estate * * *".
Three days later, on April 16, 1966, without further Order of Court, the Executrix conveyed by warranty deed to one Hazel A. Johnson, of Elyria, Ohio, the sole parcel of real estate owned by decedent at the time of his death, described as follows, to-wit:
The South 210 feet of the West 156 feet of Lot 7 of Hough's Plat as shown on the official map of the Town of Mount Dora, filed 8 May 1918 and recorded in Plat Book 3, page 37, of the public records of Lake County, Florida;
which deed was recorded on April 19, 1966.
The two residuary beneficiaries, Timmer and Watkins, thereupon filed Objections to such conveyance, setting forth that said deed had been executed by the Executrix "without any authority" and in "violation of the Order * * * on April 13, 1966" aforesaid, and that she allegedly "sold the property to prevent your Petitioners [beneficiaries] from selling the property for purposes other than residential; and it is known to your Petitioners [beneficiaries] that the said Executrix, individually, owns property adjoining the premises so sold and conveyed".
The Executrix filed written Reply to said Objections, admitting the conveyance to Johnson, but contending that said conveyance was "pursuant to the authority given her by said Last Will and Testament", and setting forth further that the aforesaid Order of April 13, 1966, directed distribution "of the remaining assets of said estate but said order did not direct that the real property be distributed to the beneficiaries as real property but merely that the assets be distributed without mentioning specifically real or personal property" * * * and that the Executrix stood "ready, willing and able to distribute the proceeds of said sale one-half to each of said heirs (sic)".
On June 8, 1966, the County Judge, after hearing and taking of sworn testimony, made the Order now being here appealed, which Order made findings 
 that the "partial accounting" of the Executrix for the period ending December *550 31, 1965, showed assets of the estate in her possession aggregating a total valuation of $69,307.65; consisting of a bank account of $2,004.02; savings and loan certificates of $25,125.00; two I.S. Government Bonds, $18,618.63; a watch valued at $10.00; furniture and furnishings valued at $150.00; plus the Mount Dora real estate in question;
 that pursuant to the order of April 13, 1966, the Executrix had distributed to the beneficiaries, after paying the fees and administration costs, assets of personalty aggregating $50,718.63, consisting of savings and loan certificates and the two U.S. Government bonds;
 that the Executrix did not apply to the Court for previous authority to sell the real estate to Johnson, nor for confirmation thereafter;
 that "there was no necessity to sell said real estate for the purpose of paying the debts of the Decedent nor of the costs and expenses of administration," nor were there any "outstanding and unpaid debts, except Executor's fees and Attorney's fees and the accounting showed ample money on hand with which to pay these";
 that "there was no necessity to sell said real estate for the purpose of making distribution" and no reason why "said property could not be distributed in kind"; and
 that the language of the will indicated "a testamentary intent that all real and personal property not needed in the administering of the Will should descend to the devisees and legatees in kind", and also indicated no intent to empower the Executrix "in her uncontrolled discretion to liquidate" the estate for "no purpose other than to make distribution to the beneficiaries "in cash rather than in kind".
The Order thereupon adjudged that, under the facts found as aforesaid, the Executrix had no authority under the Will to convey the property to Johnson without authorization or confirmation by Court order, and thereupon required her to "complete the transfer, distribution and delivery of all assets of the estate", remaining undistributed, to the beneficiaries, including the described real property in question.
We have examined the transcript of testimony taken personally before the Judge and hold it to be amply sufficient to sustain the findings of fact made by him, as hereinbefore set forth. This leaves for us to consider only the conclusions of law so drawn from such findings.
The Executrix contends here that: (1) the County Judge lacked "jurisdiction to determine a dispute" between the beneficiaries and grantee in the Will; (2) the "general power of sale" granted in the Will to the Executrix permitted the conveyance to Johnson without Court authorization; and (3) the Court was without authority to "set aside the deed" in the absence of grantee Johnson being made a party to the proceeding.
The answers are: (1) the issue before the Court was essentially not a dispute between the beneficiaries and the grantee, but rather the adjudication of an unauthorized act of the Executrix; (2) under the existing facts and circumstances, the power of sale given by the Will carried certain legal restrictions by operation of law, which proscribed any binding conveyance without Court approval, and (3) the precise issue involved did not indispensibly require the presence before the Court of the grantee.
We therefore affirm.
The mere fact that a Will gives the Executor a general power of sale does not necessarily mean that the Executor has a carte blanche, unconditional, uncontrolled, right, of his own volition, to sell off all or any part of the real or personal assets of the estate, ignoring the Probate Court entirely in the process. It provides no *551 magic formula giving the Executor an "open sesame" to deal with the decedent's property entirely as if it were his own.
The 1st District Court in the case of In re: Estate of Gamble, Fla.App. 1966, 183 So.2d 849, had a situation similar in principle to that here. Judge Wigginton in that case posed the question involved as follows:
"The question presented for our decision involves a construction of that provision of the will granting the executor the power to sell or dispose of property owed by the estate, together with a construction of the probate statutes of this state relating to the exercise of such power."
The provision of the Will, containing the power to sell, there involved, is set forth in the Gamble opinion:
"* * * And I do hereby authorize and empower my said Executor to sell, transfer, assign and convey or to convert into cash such part of my Estate, real or personal, without order of Court, as may be deemed advisable to carry out the purpose of and to make distribution of my said Estate in accordance with the terms of this my Last Will and Testament, and the decision and judgment of my Executor in regard to the sale of any property and the price and terms thereof shall be final."
The opinion in Gamble then resumes:
"The language employed in the provision of the will granting the executor the power of sale appears to be clear and unambiguous. The power is specifically limited to such sales of estate property as may be deemed advisable to carry out the purpose of the will and make distribution of the estate. It seems obvious that no sale would be required in order to make distribution of the personal property owned by the testator in accordance with the specific bequests contained in the will. It is possible that a sale of all or a portion of the real estate owned by the estate may be deemed advisable if such is necessary in order to pay the specific cash bequests made by the will, or to pay the costs of administration, or both. If the executor possesses sufficient funds in the estate with which to accomplish either or both of the purposes mentioned above, then the sale of additional real property owned by the estate would not be necessary in order to carry out the purpose of the will, or to make distribution of the estate as directed therein.
* * * * * *
"From the foregoing it is our view, and we so, hold, that under the power of sale granted the executor in the case sub judice his authority to sell real property owned by the estate is limited to such sales as may be advisable in order to carry out the purpose and make distribution of the estate in accordance with the terms of the will."
The following general statement of the law applicable to such provisions in the Will, taken from 33 C.J.S. Executors and Administrators § 276, p. 1296, is set forth in Gamble (text 183 So.2d 853):
"The general rule applying to powers of sale contained in last wills and testaments appears to be as follows:
`* * * A general power of sale, however, must not be exercised arbitrarily or capriciously, and it cannot be exercised to destroy an essential quality of the estate when there are no debts of the testator to be paid, and no necessity of a sale for the purpose of division among the devisees; * * *
`If the power of sale is limited, either expressly or by implication, as determined from the testator's intention, as construed from the will and surrounding circumstances, it can be exercised only under the circumstances, in the manner, and for the purposes provided for or contemplated in the will, such *552 as for the payment of debts and legacies, or for distribution, * * *.'"
The holding in Gamble is limited to construction of the power of sale as to property in the estate not necessary to be sold in order (a) to make distribution of the estate to the residual beneficiaries named therein, or (b) to make specific cash bequests to legatees thereunder, or (c) to pay the costs of administration. If necessary for such purposes the Executor under a general power of sale needs no specific Court authorization. But absent such necessity, the opinion in Gamble is emphatic the Executor has no independent authority to sell off the estate's realty holdings, with no moving force other than his own personal impulse. The key word is necessity.
In Gamble the County Judge had refused to permit or consider evidence on the question of the necessity to sell the property in order to make distribution, pay costs of administration, etc., taking the position that under the Will the Executor had discretion to sell regardless of such necessity. The 1st District Court reversed, holding that 
"[t]he county judge erred in holding under these circumstances that the power of sale granted the executor by the testator's will invested him with the unbridled authority to make the proposed sale of real estate owned by the estate without order of court, and that it was not necessary for him to establish that such sale was necessary in order to carry out the purpose of the will and make distribution of the estate in accordance with the testator's directions."
In the instant case, by the pleadings of the beneficiaries on one hand and the Executrix on the other, a clear-cut issue of the necessity to sell was made up. The County Judge received extensive sworn testimony on such issue, and thereupon made a specific finding "that there was no necessity to sell said real estate for the purpose of paying the debts of the Decedent, nor of the costs and expenses of administration, * * *", also that "there was no necessity to sell said real estate for the purpose of making distribution for there has been no showing before this Court that said property could not be distributed in kind". (Emphasis ours).
In this posture of the case the legal question here is precisely what it was in Gamble, and we unhesitatingly approve and follow the holding of the 1st District Court therein.
The question involved in both cases is largely set at rest by the simple application of the elementary cardinal rule in the construction of Wills, namely, that the intent of the testator, as gleaned from the Will, is paramount. In Gamble the Court held that 
"by employing the words `such part of my Estate' in the provision granting the power of sale, the testator indicated an intent that no more of the estate property should be sold than was deemed advisable in order to carry out the purpose of and make distribution of the estate. In addition, the language employed in the residuary clause of the will which provides that there is devised to the legatees all the rest and residue of the estate to be theirs `absolutely and in fee simple' indicates a testamentary intent that all real property not needed in administering the will should descend to the legatees in kind."
The Supreme Court, in Butts v. Jammes, 1914, 68 Fla. 231, 66 So. 1004, held in a similar situation that "an express power given an executor to sell" property in a testator's estate "may authorize the sale by the executor of lands that are expressly devised", but pointedly qualified such power by the following language "where such a sale accords with the apparent intent of the testator". (Emphasis supplied).
In the case sub judice, the critical language in the Will, indicating whether the testator intended his real estate to be distributed *553 to his named beneficiaries in kind or in cash, is contained in the following language:
"I will, bequeath and devise all of my estate, of whatever nature and wherever situate, both real, personal and mixed, in equal shares, share and share alike, to [the named beneficiaries] to be and become their property in fee simple absolute." (Emphasis supplied).
The language "wherever situate", and "in equal shares", and particularly "in fee simple absolute", showed irrefutably that the testator intended his property, particularly the one piece of real estate he owned, to go to his two beneficiaries as such and as he left it, subject to nothing short of necessity in administration. Persons just don't bequeath cash money "in fee simple absolute". The County Judge held that "the language employed in the residuary clause of the Will" from which the above quoted excerpts are taken, "indicates a testamentary intent that all real and personal property not needed in the administering of the Will should descend to the devisees and legatees in kind."
In arriving at such finding, the County Judge was giving approbation to what the Supreme Court said in Brickell v. DiPietro, 1940, 145 Fla. 23, 198 So. 806, as follows: "[i]n the construction of a will, the court should be guided by the intention of the testator, and the court must give effect to such intention if it can be ascertained from four corners of the will, and the whole instrument should be considered in determining intention of testator as expressed in his last will." See also Lawyer v. Munro, Fla.App. 1960, 118 So.2d 654; Park Lake Presbyterian Church v. Henry's Estate, Fla. App. 1958, 106 So.2d 215; Meszaros v. Holsberry, Fla. 1956, 84 So.2d 565, and In re: Williams' Estate, Fla. 1952, 59 So.2d 13.
The Executrix contended that the private sale to Johnson was in accordance with the County Judge's order made three days earlier, on April 13, 1966, but an examination of said Order will disclose that in the last paragraph thereof the Executrix was specifically ordered to, "upon payment of said costs of administration and final Court costs, * * * distribute to the two beneficiaries" named therein "the remaining assets of said estate". This would seem to plainly contemplate distribution to the beneficiaries in kind. And the Executrix did just that as to the remaining items of assets, consisting of five Savings & Loan certificates and two Government bonds.
In the Objections filed by the beneficiaries to the sale to Johnson, it is averred that the Executrix had allegedly stated that "she sold the property" to prevent the beneficiary from coming into possession and reselling the same "for purposes other than residential" because the Executrix individually owned property adjoining the real premises in question. Such allegation was not denied by the Executrix, but she did allege that before making the sale to Johnson she "showed" the Will to the County Judge and inquired of him "whether or not she needed Court authority to sell said property regardless of whether or not it need be sold for payment of debts" and the County Judge replied that "the Will gave her authority to sell without Court Order". This latter contention is no justification for the sale, even if true, because such an informal, ex parte, remark made in passing, even by the Probate Judge, would not comport with due process nor in any way accrue to the dignity of a solemn Court Order specifically authorizing the sale, made after due notice and adversary hearing. And the mere fact that the Executrix may have felt impelled to inquire, however informally, of the County Judge as to her testamentary authority in the premises would indicate some doubt in her mind as to her unrestricted right to sell. But in addition to all that, it was this same County Judge that she allegedly informally inquired of who, after full hearing, entered the instant Order being now appealed, holding *554 in effect the sale to be void and unauthorized.
The holding herein comports with the rationale of F.S.Secs. 733.22[1] and 733.23,[2] F.S.A. The former section does not contemplate that the Executor has an "unbridled authority", to use the language of the 1st District Court in Gamble, to sell the decedent's property simply by his own whim or caprice, the same as if he owned it himself, and without there existing any necessity therefor in carrying out his fiduciary responsibilities to administer the estate according to the decedent's Will and the intent deduced therefrom.
This principle is inherent in the law of probate, in keeping with a due appreciation of the fiduciary obligations of the Executor. Where a power of sale is conferred by the Will and it is necessary for purpose of administration that assets of the estate be liquidated, the Executor may properly exercise his power to sell without resort to the Probate Court. But where it is not necessary to make such liquidation in order to administer the estate, even under a general power of sale, the Probate Court should sanction the sale. In such event the requirements of Sec. 733.23 should be observed, failing which the proviso therein, "that no title shall pass until by order of the county judge the sale shall be authorized or confirmed", would apply.
Under our views herein expressed, no question arises as to the jurisdiction of the County Judge to make the order complained of. No question of title to real estate exists, because title did not effectually pass without prior authorization or subsequent confirmation by the County Judge. The presence of the grantee Johnson before the Court as a party to the proceeding was not essential because she was charged with notice that she was dealing with an asset of a decedent's estate which was under the supervision and control of the County Judge. The rule of caveat emptor applies to Executors' sales of realty. Fletcher v. Rickey, 1934, 114 Fla. 563, 154 So. 148; 33 C.J.S. Executors and Administrators § 320, p. 1367.
It follows that the order of the County Judge appealed must be and is
Affirmed.
LILES, Acting C.J., and OVERSTREET, MURRAY W., Associate Judge, concur.
NOTES
[1] 733.22: Sale pursuant to will.

In every case where a power is given in a will to sell or dispose of property of the estate, or any interest therein, a sale made under authority of such will by the executors, or such of them as qualify, or by the surviving executor or executors shall be valid. Sales made under authority of such will by the administrator with the will annexed, or by the administrator de bonis non shall also be valid if it appears from the will that the testator intended to confer such power to representatives of his estate other than the named executor or executors.
[2] 733.23: Sales where no power conferred.

Whenever any administrator of a decedent dying intestate, or any executor or administrator with the will annexed whose testator has not conferred upon him a power of sale or whose testator has granted such power but that power is so limited by the will or by operation of law that it cannot be conveniently exercised, shall consider that it is for the best interest of the estate and of those interested therein that the property of the estate be sold for distribution or for any other purpose, the personal representative may sell the same at public or private sale; provided, however, that no title shall pass until by order of the county judge the sale shall be authorized or confirmed. Sales may be authorized before made or confirmed after made. Application for authorization or confirmation of sale shall be made by the sworn petition of the personal representative setting forth the reasons for such sale, a description of the property sold or proposed to be sold, and except when authorization or confirmation of the sale at the current market of stocks or bonds listed upon an established exchange is applied for, the price and terms of such sale.