393 So.2d 25 (1981)
HOSPITAL AFFILIATES OF FLORIDA, INC., D/B/a Coral Reef General Hospital, As Assignee of M.D. Services, Inc., D/B/a Miami Dade General Hospital, the Interested Party, Appellant,
v.
Marion McELROY, Personal Representative, of the Estate of Alice Marion Baker, Deceased, Appellee.
No. 80-772.
District Court of Appeal of Florida, Third District.
January 13, 1981.
Rehearing Denied February 13, 1981.
*26 David Block and Ira B. Price, Miami, for appellant.
Simon, Schindler & Tripp and Judith A. Bass, Miami, for appellee.
Before HUBBART, C.J., and BASKIN and PEARSON, JJ.
BASKIN, Judge.
In this appeal from an order setting aside as homestead property owned by Alice Marion Baker at the time of her death, we are asked to decide whether her estate is entitled to exercise her homestead exemption. Because we hold that the homestead exemption was personal to Alice Baker as the spouse of Willie Baker, we reach a conclusion contrary to that reached by the trial court when it decided that the exemption applied to Alice Baker's estate.[1] We hold that the homestead character of Alice Baker's property ceased upon her death, and we therefore reverse the order entered by the trial court.
The stipulated statement of facts discloses that Alice and Willis Baker were owners as tenants by the entireties of a residence in Dade County, Florida. Willis was head of the family until his death on May 2, 1976, when Alice Baker became sole owner of the property by survivorship. At that time, the Bakers' two children were adults no longer living at the home. Alice lived alone in the home until her death on July 18, 1979.
On August 6, 1976, appellee Marion McElroy, Alice's daughter, brought Alice to appellant Coral Reef Hospital where, as agent for her mother, she executed a financial agreement obligating Alice to pay her hospital bill. Subsequently, the hospital filed a claim against Alice's estate for the unpaid balance of its bill.
Alice's estate petitioned successfully to have the residence set aside as homestead, under Section 222.19, Florida Statutes (Supp. 1976), thereby rendering it exempt from creditors' claims. The hospital has appealed, arguing that Alice was not a head of a family since she owned the property only as a surviving tenant by the entirety, and that any homestead exemption she may have had should not inure to her estate. The hospital also contends that application of section 222.19 would constitute impairment of contractual obligations in violation of Article I, § 10, Florida Constitution (1968).
The "homestead exemption" provision states:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by the head of a family:
(1) a homestead, if located outside a municipality, to the extent of one hundred *27 sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family....
Art. X, § 4(a)(1), Fla. Const. (1968).
The purpose of the homestead exemption is to protect the family home from forced sale for debts of the owner and head of the family, Tullis v. Tullis, 360 So.2d 375 (Fla. 1978); In re Noble's Estate, 73 So.2d 873 (Fla. 1954), and to protect surviving family members. In re Noble's Estate, supra. Homestead property is not chargeable with the decedent's debts or with the costs of administration, Estate of Murphy, 340 So.2d 107 (Fla. 1976); In re Noble's Estate, supra; Spitzer v. Branning, 135 Fla. 49, 184 So. 770 (1938).
Formerly head-of-the-family status belonged only to a person legally or morally obligated to support other family members. Beck v. Wylie, 60 So.2d 190 (Fla. 1952). In 1976, however, the Florida legislature adopted section 222.19, effective October 1, 1976, which provided head-of-family status for the surviving tenant by the entirety or spouse. It states:
(1) It is the declared intention of the Legislature that the purpose of the constitutional exemption of the homestead is to shelter the family and the surviving spouse, and such purpose should be carried out in a liberal spirit and in favor of those entitled to the exemption.
(2) The head-of-family status required to qualify the owner's property for homestead exemption, permitting such property to be exempt from forced sale under process of any court as set forth in s. 4, Art. X of the State Constitution, shall inure to the benefit of the surviving tenant by the entirety or spouse of the owner. The acquisition of this status shall inure to the surviving spouse irrespective of the fact that there are not two persons living together as one family under the direction of one of them who is recognized as the head of the family.
§ 222.19(1), (2), Fla. Stat. (Supp. 1976).
Under section 222.19, Alice Baker gained head-of-family status, when, as spouse of the owner and as a surviving tenant by the entirety, she benefited by the passage of the new law effective October 1, 1976.
Once property acquires homestead status, it remains homestead unless abandoned or alienated in a manner provided by law. Wilson v. Florida National Bank & Trust Co. at Miami, 64 So.2d 309 (Fla. 1953). See also Clark v. Cox, 80 Fla. 63, 85 So. 173 (Fla. 1920). How long does property retain its homestead character when the head of the family dies?
All homestead property loses forever its character as such when the head of the family dies unless it is reinvested with such character by virtue of some other person becoming the head of the, or a, family and residing thereon with other members of such family.
Wilson v. Florida National Bank & Trust Co., supra at 313.
Loss of the homestead character upon death of the family head is a natural consequence of the legislative purpose of section 222.19, to shelter the dependent family and surviving spouse. Although appellee argues that the exemption is claimed on behalf of Alice Baker for debts she incurred during her life rather than on behalf of her heirs, appellee presents no authority to authorize delaying the termination of the homestead property following Alice Baker's death. Wilson v. Florida National Bank & Trust Co. at Miami, supra.
Notwithstanding the fact that debts may not be charged against homestead property, Estate of Murphy, supra, that homestead property is not subject to testamentary distribution, Brickell v. DiPietro, 145 Fla. 23, 198 So. 806 (1940), and is not an asset in the hands of executives, trustees, or administrators, Spitzer v. Branning, supra, this estate is not within the protection conferred by the legislature in section 222.19 upon dependent family members. The homestead character of Alice Baker's property terminated upon her death.
*28 Homestead provisions should be construed liberally to benefit the family, but may not be used as a means of escaping honest debts. Frase v. Branch, 362 So.2d 317 (Fla.2d DCA 1978).
In light of our disposition of this cause, we need not consider the other points raised on appeal.
For these reasons, we reverse the order setting aside as homestead Alice Marion Baker's property.
NOTES
[1] The order appealed from states that the property was homestead within the meaning of Article X, Section 4 of the Florida Constitution. Alice Baker, however, did not possess the head of a family status required by the constitution, and defined by Florida courts, since she did not live with at least one other person in a family relationship. In re Wilder's Estate, 240 So.2d 514 (Fla.1st DCA 1979). The issue, then, is whether the property has homestead status within the meaning of Section 222.19, Florida Statutes (Supp. 1976) which provides head-of-the-family status for the surviving tenant by the entirety or spouse.