In re Paul L. BRINK and Loraine D. Brink, Debtors.

Bankruptcy No. 93–226–9P7.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Dec. 22, 1993.

Harvey Paul Muslin, Tampa, FL, for debtors.

Mark D. Hildreth, Sarasota, FL, for Philip and Kathleen Palmer, creditors.

Diane L. Jensen, trustee.

## ORDER ON OBJECTION TO CLAIM OF EXEMPTION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is an objection to the claim of exemptions of Paul and Loraine Brink (Debtors). Their claim of exemptions is challenged by Philip and Kathleen Palmer (Palmers) on the ground that a residence located in Port Charlotte, Florida which the Debtors claimed as an exempt homestead has been abandoned and is therefore subject to administration by the trustee. In addition, the Palmers contend that even if the residence is homestead property, the Debtors should not be entitled to retain all of the proceeds from the sale of that property if and when it is sold, because the Palmers are entitled to a lien securing a debt in the amount of $7,000.00. The Palmers also contend that the Debtors are not entitled to claim as exempt an annuity purchased by them in 1991, based on the proposition that the Debtors fraudulently converted the equity in their North Carolina property for the purpose of creating an exempt asset in the form of an annuity, based on Florida Statutes § 222.21. The relevant facts, as developed at the final evidentiary hearing by testimony of witnesses and by stipulation of the parties, are as follows:

At the time relevant, the Debtors were 51% shareholders in Real Estate Digest of Charlotte County, Inc., a Florida corporation engaged in the business of publishing a digest of real estate listings. The Palmers were 49% minority shareholders. In 1989, the Debtors sold their stock interest in the company to Sedilane Corporation, a corporation wholly owned by the Debtors. In 1990, the Palmers filed a shareholders' derivative suit against the Debtors, which resulted in court-ordered mediation and ultimately a Settlement Agreement signed on May 3, 1991. Although the Debtors tried to set aside the Settlement Agreement, the Palmers obtained a Final Judgment against the Debtors in the principal amount of $58,800.00.

On May 24, 1991, shortly after the execution of the Settlement Agreement, the Debtors listed their Port Charlotte residence for sale with Gonsalves Realty with the asking price of $145,000.00. In addition to the Port Charlotte home, the Debtors also owned a home in North Carolina since 1987.

In June, 1991, the Debtors entered into a lease agreement with John Johnson Ford, Inc. in Brevard, North Carolina for the lease of a 1991 Ford Explorer. (Palmers' Exh. 13). The Debtor's application to lease the vehicle stated that their "present address" was in Brevard, North Carolina and that their "previous address" was in Port Charlotte, Florida. (Palmers' Exh. 15). A condition in the Lease included the proviso that the "lessee will not use or permit the use of the vehicle outside the State where the vehicle was first titled or registered for more

than thirty (30) days without the lessor's and Ford Credit's prior written consent . . ." (Palmers' Exh. 13). The vehicle was registered in North Carolina (Palmers' Exh. 14), and the vehicle had not been used outside the state of North Carolina for more than 30 days since it was acquired.

In August, 1991, the Debtors applied for a home equity loan from CK Federal Savings Bank for $15,400.00, secured by a second mortgage on their North Carolina real property (Palmers' Exh. 19). A requirement for the underwriting of this equity loan was that the Debtors intended to make the North Carolina property their permanent home (Palmers' Exh. 21). The Debtors received the loan and, in December 1991, used $13,400.00 of the proceeds to purchase an annuity with Nationwide Life Insurance Company through their financial advisor, Susan Mosely, to whom they were referred by their attorney. It is without dispute that the Debtors specifically inquired of Ms. Mosely whether or not the purchase of the annuity was exempt from the claims of creditors. The Debtors also inquired as to the method of cashing in the annuity before the annuity maturity date of April 15, 1996, and the penalty to be incurred if they elected to do so. At the time the Debtors purchased the annuity, the Debtors were already involved in litigation with the Palmers.

In March, 1992, ten months before filing the Petition for Relief under Chapter 7 of the Bankruptcy Code, the Debtors received $7,000.00 from Mr. Brink's daughter and paid off the second mortgage equity loan on the Port Charlotte property, which reduced their monthly payments on the property by $100.00 per month.

The Debtors continued to attempt to sell their Port Charlotte property throughout 1991 and 1992. In January, 1992, the Debtors signed a new listing agreement with Morris Realty with a revised listing price of $139,900.00. In July, 1992, the Debtors entered into a third listing agreement with Aztec Realty Corporation and reduced the listing price to $119,900.00. (Palmers' Exh. 10). On September 24, 1992, while under the third agreement with Aztec, the Debtors signed a contract for the sale of the Port Charlotte property for the purchase price of $116,500.00, with the closing originally scheduled for November 13, 1992. (Palmers' Exh. 11). The closing, however, never took place due to a cloud on the title as a result of the Palmers' unsatisfied judgment for $58,800.00. The contract to sell the property is still open and technically could be closed.

In October, 1992, following the signing of the contract for sale of the Port Charlotte property, the Debtors moved their belongings out of the home. Some of the removed possessions were moved to the North Carolina residence, and the rest was placed in a storage facility in Florida. Water and electricity were not disconnected in order to maintain the pool and lawn. Following the signing of the contract for sale, the Debtors spent only one night in the house when they returned for the Special Master's Hearing in connection with the Palmers' attempt to collect on their judgment.

In October, 1992, the Debtors transferred all of their important documents from a safety deposit box in a Charlotte County Bank to a fire-safe box installed in their North Carolina home. Monthly statement from CK Federal Savings, the Debtors' bank in North Carolina indicate that the majority of the Debtors' banking was done in North Carolina during 1992 (Palmers' Exhs. 12 and 22).

It is without dispute that the Debtors received a brochure from a realtor in Crestview, Florida in early November, 1992 regarding properties for sale in the Florida Panhandle, however the Debtors did not visit the area until after their Petition for Relief was filed and did not indicate to the realtor a price range or location preference. Notwithstanding, the Debtors have maintained Florida driver's licenses and are registered to vote in Florida.

On January 8, 1993, the Debtors filed a voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. In their Schedule C, the Debtors claimed the Port Charlotte property and certain personal property as their homestead exempt from administration, pursuant to Article X, Section 4 of the Florida Constitution and § 222.01, et seq. of the Florida Statutes.

Based on the foregoing facts, the Palmers contend that the Debtors abandoned their Port Charlotte homestead, and therefore, the property cannot be allowed as exempt. In opposition, the Debtors contend that, even though they placed the Port Charlotte property on the market, they intended to use the proceeds from that sale to purchase a smaller homestead in Florida, possibly in the Panhandle.

It should be noted at the outset that the homestead provision of the Florida Constitution should be liberally construed in favor of the party claiming the exemption, and that the exemption's purpose is to protect and foster the family home. *In the Matter of Hersch*, 23 B.R. 42 (Bankr. M.D.Fla.1982), *Hospital Affiliates of Florida, Inc. v. McElroy*, 393 So.2d 25 (Fla. 3rd DCA 1981). Therefore, the burden is on the objecting party to make a strong showing that the claimant is not entitled to the claimed exemption. *In re Imprasert*, 86 B.R. 721 (Bankr.M.D.Fla.1988). It is also clear that in the event the family home is abandoned, it loses its exempt status. *In re McCarthy*, 13 B.R. 389 (Bankr.M.D.Fla.1981); *M.O. Logue Sod Service, Inc. v. Logue*, 422 So.2d 71 (Fla. 2nd DCA 1982).

It is without dispute that in May of 1991, the Debtors were facing the prospect of having to comply with the Settlement Agreement with the Palmers. Three weeks later, the Debtors placed the Port Charlotte residence on the market and then moved their belongings to North Carolina. The Debtors continued to try to sell the Port Charlotte property until a contract for sale was signed in September of 1992.

This Court is satisfied that the totality of the facts as established by the record support the position that the Debtors did effectively reestablish their residence in North Carolina, as evidenced by their banking activity, transferring their important documents, leasing an automobile in North Carolina, and removing most of their possessions from the Port Charlotte residence. Also, as early as the summer of 1991, the Debtors had expressed in writing their intention to permanently reside in North Carolina, both on the home equity loan application and on the car lease application. And by the Fall of 1992, after entering into a contract for sale on the Port Charlotte residence, the Debtors had relocated to North Carolina.

This Court is further satisfied that there is no credible evidence to support the Debtors' contention that they intended to reinvest the proceeds of the sale of the Port Charlotte property when sold and relocate to the Florida Panhandle. No serious steps were taken by the Debtors to purchase property in the Panhandle and they never even visited the Panhandle area until after the date of the commencement of the case. Based on the foregoing, this Court is satisfied that the Debtors have effectively abandoned their Port Charlotte homestead. Accordingly, the Palmers' Objection to the Debtors' claim of exemption of the homestead should be sustained.

This Court is satisfied, however, that the Palmers' contention that they are entitled to have a "lien" imposed on the proceeds of the sale of the property is without merit, as there is no basis in fact or in law which would warrant the imposition of a lien on the Port Charlotte property.

The Palmers also contend that the purchase of the annuity by the Debtors was a fraudulent conversion of non-exempt property located in North Carolina into an exempt annuity, and therefore the Debtors forfeited their right to exempt the annuities. In light of the foregoing, it is unnecessary to consider the issue of forfeiture based on fraudulent conversion of non-exempt to exempt property. On the date of filing the Petition for Relief, the Debtors had already become residents of North Carolina. Therefore, none of the Florida statutory exemptions apply to them, but they are clearly entitled to the exemptions available to the residents of North Carolina.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objection to the Debtors' claim of homestead exemption of their Port Charlotte residence filed by Philip and Kathleen Palmer is hereby sustained, and the claim of homestead exemption of the Debt-

ors' Port Charlotte residence is disallowed. The property shall be subject to administration by the Trustee for the benefit of the estate. It is further

ORDERED, ADJUDGED AND DE-CREED that the Objection to the Claim of Exemption as to the annuity filed by Philip and Kathleen Palmer is hereby overruled without prejudice to the Palmers to object to the North Carolina claim of exemptions.

DONE AND ORDERED.