**In re Martin L. VAUGHAN, Niccolette Vaughan, Debtors.**

**Bankruptcy No. 94–10441.**

United States Bankruptcy Court,
E.D. Kentucky,
Ashland Division.

Sept. 27, 1995.

Jonathan L. Gay, Lexington, Kentucky, for debtors.

Schuyler J. Olt, Louisville, Kentucky, for Florida Department of Insurance.

Lisa Koch Bryant, Louisville, Kentucky, for Hugo Carter, et al.

Jerry Truitt, Lexington, Kentucky, for Dealers Underwriting Services, Inc.

Susan Durant, Lexington, Kentucky, for Chapter 11 Trustee.

### MEMORANDUM OPINION

WILLIAM S. HOWARD, Bankruptcy Judge.

This matter is before the Court on objections to the debtors' claimed homestead exemption. Objections have been filed herein by the Florida Department of Insurance, as receiver of Dealers Insurance Company ("FDI"), Hugo Carter, et al. ("Carter"), Dealers Underwriting Services, Inc. ("DUS"), and Thomas E. Bulleit, Jr., Chapter 11 Trustee ("the Trustee") in this case. The Court heard arguments on the objections on May 25, 1995, and the matter was submitted for decision by Order entered June 14, 1995.

The objections under submission all relate to the debtors' claim of a homestead exemption in a parcel of real estate in Florida. DUS filed its Objection on March 22, 1995; Carter filed his Objection the following day. FDI filed its Objection on March 30, 1995. The Trustee filed his Objection on May 10, 1995. The debtors filed a Response to the Objections to Exemptions on May 17, 1995. Pursuant to the terms of the May 23, 1995 Order, the objecting parties and the debtors have designated portions of the record upon which they wish the Court to rely in deciding this matter.

The record in this case reveals that the debtors filed their Chapter 11 petition in this Court on December 23, 1994 reciting that they had a residence in Kentucky for 180 days prior to the filing. An earlier Chapter 11 petition had been filed in this district by a corporation, Tri–City Turf Club, Inc., in which debtors are involved as shareholders and Mr. Vaughn is involved in operating. No schedules were filed with the petition in this case.

On January 4, 1995, the debtors filed a Motion for Authorization to Assume Agreement for Deed for 5526 Plymouth Sorrento Road Property, for Authorization to Sell Property Outside the Ordinary Course of Business and for to (sic) Purchase New Property. The debtors asked that they be allowed to sell the property and certain personal property for $1.2 million and requested an order allowing them to purchase a less expensive property and retain the difference. The property which is the subject of this motion is that in which the debtors claim a Florida homestead exemption. The property has a primary residence, a smaller residence, a mobile home and various barns and other improvements and contains less than 160 acres.

The personalty to be sold in the proposed sale contains, among other items, most of the furnishings of the main residence. The extensive list of furnishings being sold with the house is attached to the motion and appears to be enough to substantially furnish the house. At the time the motion was filed, however, the debtors had made no home-

stead exemption claims since they had not yet filed their schedules. The record reveals that the debtors had used the property to raise and train horses and, at the time of filing, had approximately 75 of their horses boarded there.

The debtors' schedules and Statement of Financial Affairs were filed on January 13, 1995. They list assets of $13,721,065.00 and debts of $7,127,889.20. Schedule C—Property Claimed as Exempt listed the property at 5526 Plymouth–Sorrento Road, Apopka, Florida, ("the Apopka property") claiming a homestead exemption provided by the Florida Constitution to the extent of the property's stated value of $1.2 million. The schedules listed various other real properties including another residence of the debtors in Boyd County, Kentucky, which the debtors acquired in the spring of 1994, and which has a value of approximately $700,000. This property is where the debtors reside in Kentucky. The debtors stated that they bought this property as a place to live because they were involved on the operation of the Mountain Meadows Racetrack operated by the related debtor, Tri–City Turf Club, Inc., near Ashland, Kentucky.

The schedules listed no bank accounts at the time of filing although the record reflects that the debtors have, since filing, established a debtor-in-possession account in Kentucky.

Debtor Martin L. Vaughan acquired the Apopka property when he entered into the above-referenced Agreement for Deed with Kenneth Tapley on July 15, 1990. Pursuant to the terms of the Agreement for Deed, Mr. Vaughan and Mr. Tapley were to effect an exchange of properties: Mr. Vaughan acquiring the Apopka property with a stated value of $1.1 million, and Mr. Tapley acquiring property in Pasco County, Florida, ("the Pasco County property") worth $350,000.00 and $750,000.00 in cash.

Mr. Vaughan owed Mr. Tapley $383,449.98 as of January 1, 1995. Of this amount, approximately $260,000.00 was to be paid jointly to Mr. Tapley and Bank First of Winter Garden, Florida, which holds a first lien on the Apopka property. The debtors represent that under Florida law, Mr. Vaughan

owns the Apopka property and holds an equitable lien on the Pasco County property. Pursuant to the Agreement for Deed, Mr. Vaughan is required to transfer the Pasco County property free and clear of liens in order to obtain the Apopka property free and clear of liens.

The debtors were involved in certain insurance and other businesses in Florida and received income from them until September, 1994, when a receiver was appointed in a state court action and apparently discharged the debtors from their employment there. In that action certain of the records of debtors and related corporations had been seized and various motions have been heard by this Court concerning the debtors' right to possession of certain of these records. Additional civil actions are pending involving one or both of the debtors in the United States District Courts in the Middle District of Florida and the Northern District of Georgia.

Since the collapse of the Florida businesses, the debtors have, as reflected in the filing in this Court, spent the bulk of their time in Kentucky at least part of which has been in an effort to reorganize the business of the race track in its related proceeding. While a dispute exists as to why it happened, the real property on which the race track operated remains in the name of Mr. Vaughan.

On January 17, 1995, the debtors filed an Amendment to Voluntary Petition. The Amendment deleted the Chapter 11 petition's venue statement and replaced it with the following:

Debtors have a domicile and a residence in Florida, but also have had a residence in this District for 180 days immediately preceding the date of this petition, and there is a bankruptcy case concerning debtor's affiliate pending in this District.

The debtors filed an Amended Motion for Authorization to Assume Agreement for Deed, etc., on January 19, 1995. However, on February 6, 1995, the debtors filed a Notice of Withdrawal of Motion concerning, *inter alia*, the subject Florida property.

The issue before the Court is whether the debtors may properly claim a homestead ex-

emption in the Apopka, Florida property. Exemption claims are governed by 11 U.S.C. § 522(b)(2) which provides that a debtor may claim as exempt:

> (2)(A) Any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; . . .

Florida having opted out of the federal exemption scheme, a homestead exemption is claimed in that state pursuant to Article X, § 4 of the Florida Constitution which provides in pertinent part as follows:

> (a) There shall be exempt from forced sale under process of any court, . . . , the following property owned by a *natural person:* (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, . . .

In this instance the Court must first determine if the debtors were domiciled in Florida.

As concerns the question of domicile, it may be helpful to consider the interplay between the concepts of exemption, venue, domicile, and residence. At least one of the objections being considered herein argues that the debtors admitted that they are "domiciled" in Kentucky by filing their petition here. The venue for commencement of a case under title 11 is, pursuant to 28 U.S.C. § 1408, the district in which the debtor has had a domicile, residence, principal place of business in the United States, or principal assets in the United States for the 180 days immediately preceding the commencement, or the district in which the debtor's affiliate, general partner, or partnership has a case pending.

 It is clear, therefore, that a debtor may file in the district where he has either a residence or a domicile. The filing of a petition does not constitute an admission concerning domicile. However, a debtor may only claim an exemption in property where he is domiciled. Residence and domicile are not necessarily the same thing. As stated by the Florida Supreme Court in *Minick v. Minick*, 111 Fla. 469, 149 So. 483 (1933):

> [Domicile] is of more extensive signification and includes, beyond mere physical presence at the particular locality, positive or presumptive proof of an intention to constitute it a permanent abiding place. 'Residence' is of a more temporary character than 'domicile.' 'Residence' simply indicates the place of abode, whether permanent or temporary; 'domicile' denotes a fixed, permanent residence, to which, when absent, one has the intention of returning.

149 So. at page 489. The question of where the debtors herein are domiciled turns, therefore, on their intentions concerning the "fixed, permanent residence" to which they intend to return when absent.

 While the subjective statements of the debtors must be considered in determining domicile, the Court must also look at the objective facts of the debtors' actions in evaluating the matter where the debtors have much to gain, as here, because of the disparity in the essentially unlimited Florida homestead exemption as compared to the rather meager Kentucky homestead exemption of $10,000 for a married couple provided by KRS 427.060.

 The debtors testified at their § 341 meeting on February 2, 1995, that they had two residences, one in Florida and one in Kentucky, and that in the six months prior to the meeting they had spent more time in Kentucky than in Florida. They further testified that they intended to sell the Ashland, Kentucky property. When asked why he had characterized his Florida residence as his "domicile," debtor Martin L. Vaughan stated that it was his home, that he and his wife had lived in Florida for "years and years," and didn't intend to change. When asked why they had purchased a house in Ashland, Mr. Vaughan replied, "To have a place to live 'til we get through here." Debtor Niccolette Vaughan testified that she was registered to vote in Pasco County, Florida, and had been since 1980 or '81.

■ The debtors filed identical affidavits on May 25, 1995, stating their intention to remain permanent residents of Florida and outlining their interests there. "[C]ontinuous uninterrupted physical presence is not required to create a homestead." *Burdick v. Burdick*, 399 So.2d 410 (1981), at page 412.

■ As concerns allegations that the debtors are not entitled to claim a homestead exemption in the subject property because it was acquired with funds obtained by fraud, there has been no proof offered as to these allegations. Absent proof of such fraud, the Court will not consider it in determining the issue of the homestead exemption. The next question to be addressed, therefore, is whether the debtors have abandoned the homestead.

■ Florida case law is consistent in holding that a homestead is not perpetual; it may be abandoned. In *Matthews v. Jeacle, et al.*, 61 Fla. 686, 55 So. 865 (1911), the court stated:

> It has been settled in this state that the 'homestead' intended by our Constitution to be exempted is the place of actual residence of the party and his family....; and, though a temporary absence will not deprive the homestead claimant of his right, unless it appear that there was a design of permanent abandonment, yet a permanent abandonment of the homestead as a bona fide home and place of permanent abode strips it of its homestead character. (Cites omitted.)

55 So. at page 691. Whether or not an abandonment has occurred so as to deprive a homestead of its exempt character is to be determined "by a consideration of all the pertinent facts and circumstances of each case as it arises, ..." *Nelson v. Hainlin*, 89 Fla. 356, 104 So. 589 (1925), at page 358. There is a presumption against abandonment, and a proponent must demonstrate by clear and convincing evidence that an abandonment occurred. *Burdick v. Burdick, supra*, at page 413.

Putting property on the market for sale has been held to be a strong indication of abandonment. In *In re Brink*, 162 B.R. 355 (Bkrtcy.M.D.Fla.1993), the debtors placed their Florida residence on the market and moved their belongings to North Carolina. They conducted banking activity in North Carolina, transferred documents there, and leased a car there. They further expressed in writing their intention to reside permanently in North Carolina on a home equity loan application and on the car lease application. The court found that these facts taken together evidenced an intention to abandon the Florida homestead. *Id.*, at page 358.

In *In re Goode*, 146 B.R. 860 (Bkrtcy. M.D.Fla.1992), the debtors moved to Florida from New Hampshire. After several years in Florida, they returned to New Hampshire to oversee some business interests there. Before returning to New Hampshire, they put their Florida home on the market for sale, and, when it did not sell, leased it on a month to month basis. They transferred their active bank accounts to New Hampshire.

The debtors in the *Goode* case owned a pickup truck and a boat, both of which were registered in New Hampshire. Both debtors had real estate broker licenses issued by Florida and New Hampshire. Both were registered to vote in Florida and held Florida driver's licenses. They did not live at the Florida address for two years before they filed their Chapter 7 petition. Under these facts, the court determined that the homestead had been abandoned. *Id.*, at page 862.

Most recently, in *In re Frederick*, 183 B.R. 968 (Bkrtcy.M.D.Fla.1995), the court stated the following concerning abandonment of a homestead:

> A homestead has been abandoned when it is no longer a 'bona fide home and place of permanent abode.' ... This Court agrees with others which have held that leasing homestead property constitutes abandonment of that property....
>
> In this case, defendant maintained the property as homestead until he and his family vacated the home and put it on the market. The Court finds that in placing the property on the market for sale or lease, defendant abandoned his intent to use and occupy the property as a permanent place of residence, and the property

no longer qualifies for the homestead exemption. (Cites omitted.)

At page 971. The record in the within matter indicates that the debtors put their Florida property up for sale on October 22, 1994. To date, however, the property has not been sold.

The debtors have attempted to sell the Florida property substantially furnished. The fact that the debtors are attempting to sell the property furnished suggests to the Court that their most important belongings, that is, the kind which most people would have and keep in their fixed, permanent abode, are not in the Florida home but elsewhere. The purchase of a very expensive home, at least by Kentucky standards, in Kentucky at which the debtors have spent the bulk of their time in the months prior to filing also weighs in this decision.

The termination of employment and income in Florida and the association of the debtors with the racetrack in Kentucky must also be considered. Additionally, the debtors have title to the Kentucky home and merely a land contract interest in the Florida home. When the Court considers all of the factors involved here, it is clear that the debtors have abandoned the Florida homestead, if, indeed, it was ever a homestead.

In consideration of all of the foregoing, it is therefore the opinion of this Court that the debtors may not claim a homestead exemption in regard to their Florida property, and the objections to the claim of exemption should be sustained. An order in conformity with this opinion will be issued separately.