MARGUERITE O. SEMPLE, *Appellant,* v. JOHN S. SEMPLE, *Appellee.*

Opinion Filed July 30, 1921.

Petition for Rehearing Denied October 20, 1921.

1. A conveyance of the homestead real estate to the wife by the husband alone, is void where there are children whose homestead rights would be affected by the attempted conveyance.

2. Where a person purchases property with the openly avowed intention of making it a home and residence for himself and family and is actually engaged in putting the property in condition to be occupied, and where it is clearly the manifest intention of the owner to occupy the premises immediately as a home, and this intention is evidenced by specific acts and doings that are not compatible with a different intention, and there is nothing done by the claimant showing a different intention, or that is inconsistent with the asserted intention to make the place his homestead, the homestead character will attach.

3. The head of a family made a deed of conveyance to his wife of real estate upon which he commenced to make improvements, but which was not then in a condition for occupancy as a home or otherwise, *Held,* that the execution of such deed in connection with other circumstances evidences an intention not compatible with an intention by the grantor to

claim the property as a homestead when ready for occupancy, and the conveyance by the husband to the wife was a valid conveyance.

An Appeal from the Circuit Court for DeSoto County; George W. Whitehurst, Judge.

Decree reversed.

*Timberlake & Robbins,* for Appellant;

*Leitner & Leitner,* for Appellee.

BROWNE, C. J.—In November, 1906, John S. Semple owned a hundred and eight acres of land, including the N. W. 1/4 of S. E. 1/2 of Sec. 24, T. 37 S., of R. 24 E., in DeSoto County, Florida. About this time he with his wife and one child, moved to DeSoto County, from Pennsylvania, and shortly afterwards began clearing and grubbing a portion of the land and erecting a dwelling house and other improvements to be used as a home for himself and his family.

On December 9, 1906, he executed a deed of conveyance to his wife to the N. W. 1/4 of S. E. 1/2 of Sec. 24, T. 37 S., of R. 24 E., on which he was making the improvements. The deed was recorded on December 10th, and shortly afterwards, or shortly before Christmas, he delivered it to her. Sometime in the month of February following, Semple and his family moved into the house and began occupying the premises as their home. Prior to this the family had rooms in the Town of Arcadia and their furniture was stored awaiting the completion of the house. Some years later the wife instituted divorce proceedings and the husband in this suit seeks to have the deed executed by him to

his wife cancelled as being void and conveying no title to the homestead real estate. The court decreed a cancellation of the record of the deed and the defendant appealed.

It seems well settled in this State that a conveyance of the homestead real estate to the wife by the husband alone, is void where there are children whose homestead rights would be affected by the attempted conveyance. Byrd v. Byrd, 73 Fla. 322, 74 South. Rep. 313; Thomas v. Craft, 55 Fla. 842, 46 South. Rep. 594; Rawlins v. Dade Lumber Co., 80 Fla. 398, 86 South. Rep. 334.

The question in this case is, was the property in controversy homestead real estate at the time the conveyance was made? Semple had never occupied it as a home or otherwise; the house in process of construction was not in condition for occupancy when the deed was executed, and was not in such condition until sometime in February thereafter. It was situated about two miles from Arcadia, where Semple and his wife and child had occupied rooms since they came to Florida in November of that year.

In Solary v. Hewlett, 18 Fla. 756, the party claiming the homestead, owned a lot on which were three dwelling houses which had been leased to and occupied by tenants since he purchased the property. Hewlett lived upon other premises, the property of his wife. He claimed to have purchased the property in question with the openly-avowed intention of making it a home and residence for himself and family; that it was not in a condition of repair suitable for a residence, but that he intended to make the necessary repairs and to occupy the premises as a homestead as soon as his means would admit. In that case the court cited from Elston & Green v. Robinson, 23 Iowa 210, to this effect: "Under our statute there is an unbroken

series of decisions, that occupancy, the use of the house by the family as a homestead, are essential requirements to impress the property with the character of a homestead. A mere intention to occupy it, though subsequently carried out, is not sufficient.'' In the Solary v. Hewlett case, *supra*, the facts showed at best a mere intention at some indefinite time in the future, to occupy the premises as a homestead. The court laid down this rule: ''The actual use and occupation by the owner and his family of premises designed as a homestead, is essential to impress the property with that character. The mere intention, at some future day, to repair and occupy them as such, where such intention is not manifested by acts as well as words, is not sufficient.''

In Drucker v. Rosenstein, 19 Fla. 191, the court considered certain facts, which it was claimed established that Rosenstein ''manifestly intended the property to be used, as part of the home of the family.'' The facts were these: The claimant purchased a lot in February, 1882, and in the following March he filed and recorded in the records of the probate office of the County Judge, his statement in writing containing a description of the property and claiming the same as a homestead. The property was levied on by the sheriff under an execution, but prior to that time the claimant had made a contract with a builder, and the specifications were drawn and agreed to, for the building of a dwelling house upon the lot, which the defendant said he intended to be the homestead of himself and family. The sills for the building had been deposited on the lot, and the house would have been in process of construction had it not been for the institution of proceedings to subject the lot to the claims of creditors. Even these facts were held not to be sufficient evidence of a ''manifest in-

tention to immediately occupy the premises as a home-stead."

In Oliver v. Snowden, 18 Fla. 823, this court laid down the rule that the homestead "is the place of actual resi-dence of the party and his family," and that "a party residing in an incorporated town or city with his family, and owning land several miles from the town, cannot claim the latter as exempt from forced sale as a homestead, it having never been occupied by him as a residence." 2d Head note. After holding that "actual occupancy as a resi-dence" is essential to establish a homestead, the court added, "or *perhaps,*" (the italics are mine) "where it is 'manifestly intended' to be used as the home of the family, as was said by the Chief Justice in 21 Wall. 486, the mani-fest intention being shown by proof of preparations made to occupy it immediately as a home." By the use of the expression "or, *perhaps,* where it is 'manifestly intended'" etc., this court did not unequivocally adopt the rule laid down in Grosholz v. Newman, 21 Wall. (U. S.) 481, nor did it do so in Drucker v. Rosenstein, *supra,* although in both cases it seems to have been approved, but we think the rule so well grounded in principle that we have no hesitancy in adopting it. Where it is clearly the manifest intention of the owner to occupy the premises immediately as a home, and this intention is evidenced by specific acts and doings that are not compatible with a different inten-tion, and there is nothing done by the claimant showing a different intention, or that is inconsistent with the asserted intention to make the place his homestead, the homestead character will attach.

The intention of a person is a difficult matter to estab-lish, and can only reliably be shown by circumstances and acts in support of expressions of intention.

There is some conflict in the testimony of Mr. and Mrs. Semple, as to when the intention to permanently locate in Florida was formed, and if that were all on the subject of Mr. Semple's intention to hold this forty acres as his homestead, we would have to accept the finding of the chancellor on the facts, and affirm the decree. But there is uncontradicted evidence of an intention on the part of Semple that the property was not to be his homestead, that entirely destroys any inference drawn from his acts in improving the property, or any statements by him of his intention to make the place his homestead. Two months before actual occupancy and before the property was capable of being occupied, he executed the deed of conveyance of the real estate to his wife. Semple could not have a homestead in the property unless the title to it was in him. The fact that he sought to divest himself of the title by executing a deed of conveyance of the property to his wife, disproves any intention at variance with that act, and is conclusive of the fact that it was not his intention to claim the property as a homestead in the meaning of the law. To use a homely, but apt adage, "one cannot eat his cake and have too." Semple's title to the property was consumed by the deed to his wife, and without the title being in him, he could not establish a homestead on the property, and there is nothing left to support his contention that he then intended to use the property as his homestead.

Mr. Semple testified, that at the time he made the conveyance of this property to his wife it was *his intention to give it to her.* He also testified that he *gave his wife the property* because she was a little homesick, and thought she would take more interest in the property if *he gave her a home of her own.*

Two positive intentions of a contradictory character can-

not exist at the same time. The proof is clear both by testimony of Semple, and from his act in executing the deed, that two months before the property was capable of occupancy his intention was to place the title in his wife. This entirely overcomes any proof of a contrary intention.

The intention to hold the place as his homestead, and the intention to give it to his wife, could not exist at the same time, and where the latter intention culminated in the specific act of executing a deed of conveyance to his wife, all inferences or presumptions of a different intention drawn from other facts and circumstances necessarily fail. If he ever entertained the intention of making the place his homestead, he gave high and conclusive evidence of the relinquishment and abandonment of such intention, by the perpetration of an act, that made it impossible to carry it out.

The property not being in the actual use and occupancy by Semple and his family, and not being in condition for occupancy for two months after the execution of the deed, and the proof strongly negativing the idea that it was his intention to hold and occupy the premises as his homestead, the deed from Semple to his wife is valid and should be so decreed.

The decree is reversed.

TAYLOR AND ELLIS, J. J., concur.

WHITFIELD AND WEST, J. J., dissent.

WHITFIELD, J., Dissenting.—The Constitution provides that ''a homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of

any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists.'' Sec. 1, Art. X, Const. 1885.

A conveyance of the homestead real estate to the wife executed by the husband alone is void. Byrd v. Byrd, 73 Fla. 322, 74 South. Rep. 313; Thomas v. Craft, 55 Fla. 842, 46 South. Rep. 594.

In the Byrd case there were children whose rights in the homestead real estate were affected by the attempted conveyance of the homestead to the wife by the husband alone.

In Rawlins v. Dade Lumber Co., 80 Fla. 398, 86 South. Rep. 334, there were no children, and a conveyance of the homestead real estate to the wife by the husband was sustained on the ground that if under the peculiar facts in the case, the property had not lost its homestead character the conveyance was a mere relinquishment of the husband's rights therein to the wife who had continuously remained on the place as her home, there being no children. And further that if the place had lost its homestead character the conveyance was under the facts good as against the mere judgment liens of creditors who obtained judgments against the husband subsequent to the conveyance by him to his wife. See also as to occupancy of homestead real estate Clark v. Cox, 80 Fla. 63, 85 South. Rep. 173.

The constitution does not expressly require the homestead to be occupied. The word ''homestead'' implies actual or potential use for family home purposes coupled with acts or conduct showing intent to so use it.

In Oliver v. Snowden, 18 Fla. 823, text 835, it is said, "it must appear that the lands were actually used, or manifestly intended to be used, as a part of the home of the family." The manifest intention is to be shown by proof of preparations made to occupy it immediately as a home. Groshold v. Newman, 21 Wall. (U. S.) 481, text 486.

The evidence shows that the land was procured for the purpose of building a home thereon and with the intent to make it the family home, the owner, who was the head of a family in which there was then one child, having before the middle of November, 1906, begun the building of a residence, clearing of ground, planting trees, building a barn, etc., which preparations continued until the family moved on the place as their home either the latter part of December, 1906, or in January, 1907. On December 9, 1906, when the house was partially constructed, perhaps had the roof on, and other improvements for home purposes had been made, the owner executed a deed of conveyance of the property to his wife. This deed was recorded December 10, 1906, and delivered to the wife as a Christmas present, the husband testifying that he did not intend to divest himself of the home, but "thought she was the most trustworthy person to put it in, and I thought it would remain our home." "She was a little homesick, and I thought she would take more interest in the property if I gave her a home of her own." This latter intent was manifestly formed at least a month after he begun and continued the erection of the house and the preparation of the place for the family, which was accomplished, and thence forward was and is the family home, the owner having no other home, but continuously claimed and treated it as his home place.

For a month before the deed was executed the owner

worked daily on the place preparing it for the family home and the wife and child visited it at least once or twice and recognized it as the home place before the execution of the deed to the wife. From November 3, 1906, when the family arrived in Florida to make it their home they boarded in the Town of Arcadia, two miles from the land selected as the future home, and had their furniture stored in the town until it was moved to the place when the house was ready for occupancy. During this time the husband went to the place daily and worked there, making it ready for occupancy as a home for the family. Under these circumstances showing an intent to make the place the family home manifested by preparations for immediate occupancy as a home, the homestead rights of the family were impressed upon the property. See Ann. Cas. 1917A, 67; Shaw v. Kirby, 93 Wis. 379, 67 N. W. Rep. 700, 57 Am. St. Rep. 927; Woodbury v. Warren, 67 Vt. 251, 31 Atl. Rep. 295, 48 Am. St. Rep. 815; Bunker v. Coons, 21 Utah 164, 60 Pac. Rep. 549, 81 Am. St. Rep. 680; Upton v. Coxen, 60 Kan. 1, 55 Pac. Rep. 284, 72 Am. St. Rep. 341; Wike v. Garner, 179 Ill. 257, 53 N. E. Rep. 613, 70 Am. St. Rep. 102; Franklin v. Coffee, 18 Texas 413, 70 Am. Dec. 292; Reske v. Reske 51 Mich, 541, 16 N. W. Rep. 895, 47 Am. Rep. 594; Barnes v. White, 53 Texas 628; DeVille v. Widoe, 64 Mich. 593, 31 N. W. Rep. 533, 8 Am. St. Rep. 852; Neal v. Coe, 35 Iowa 407; Gill v. Gill, 69 Ark. 596, 65 S. W. Rep. 112, 86 Am. St. Rep. 213; 13 R. C. L. p. 593; 11 Stand. Ency. Proc. 302; 21 Cyc. 475; 15 Am. & Eng. Ency. Law (2nd ed.) 578.

The proofs of intent to occupy as a homestead and actual and continued preparations for immediate occupancy, followed by continued occupancy, as the only family home, are much stronger here than in Solary v. Hewlett, 18 Fla.

756, or Oliver v. Snowden, 18 Fla. 823, or Drucker v. Rosenstein, 19 Fla. 191.

While the owner of the homestead real estate and his family had not actually resided on the property as a home place when the deed to the wife was executed, yet the testimony clearly shows that the husband and wife made it plainly manifest that they intended to use the place as the home of the family, were preparing it for use as such and did in fact use it as a home place in pursuance of the intention and acts thereunder, which acts showing the intent were obvious and unmistakable before and at the time the deed was executed and delivered to the wife. Where the husband is the head of the family and the wife is the owner of the home place, homestead rights therein do not exist, and the family is not protected against the wife's permissible contracts and conveyances affecting the property.

The property was impressed with homestead rights before the deed to the wife was executed, and as there was one child when the deed from the husband to the wife conveying the homestead real estate was executed, the attempted conveyance is ineffectual.

WEST, J., concurs.