## IN RE: MARKOW, et al.

Agenda No. 58076

THE PROPERTY APPRAISAL ADJUSTMENT BOARD, DADE COUNTY

January 18, 1989

**APPEARANCES OF COUNSEL**

**Michael Brodsky,** for petitioners.

**OPINION OF THE COURT**

MALCOLM B. WISEHEART, JR., Special Master.

*FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS*

THIS MATTER came on to be heard on October 20, 1988, before me as Special Master for the Property Appraisal Adjustment Board in and for Dade County, Florida, upon petition to review denial of Homestead Exemption, and the undersigned having heard testimony of the witnesses and having reviewed the Petitioners' post-hearing written

submissions consisting of a letter-memorandum dated October 28, 1988 with exhibits and being otherwise fully advised, it appears that the salient facts pertaining to this matter are as follows:

## FINDINGS OF FACT

1. Petitioners, MARK D. CHARIFF and SHERYL CHARIFF, his wife, filed in timely fashion an application for Homestead Exemption for the year 1988 with respect to the property commonly known as 20130 N.E. 23rd Court, North Miami, Florida, and legally described as follows:

> Lot 4, Block 2, OAK FOREST HEIGHTS, according to the Plat thereof, recorded in Plat Book 94, and Page 30 of the Public Records of Dade County, Florida.

2. The Petitioners purchased the subject property on December 1, 1987.

3. When the Petitioners purchased the subject property, they intended to use same as their permanent residence; however, they were unable to enter into actual occupancy at that time because of the need to fumigate the property and to make extensive electrical and roof repairs.

4. The Petitioners set about making the repairs as expeditiously as possible and moved into the house after same were completed, which took place after January 1, 1988.

5. The Property Appraiser denied the Petitioners' application for Homestead Exemption.

## CONCLUSIONS OF LAW

The Property Appraiser denied the Petitioners' application for Homestead Exemption initially for two reasons:

(a) The Petitioners had presented insufficient evidence, in the opinion of the Property Appraiser, of the Petitioners' legal or equitable ownership of the property as of January 1, 1988; and

(b) The Petitioners did not move into the property prior to January 1 of the tax year.

Petitioners have now submitted adequate proof of their legal ownership of the property as of January 1, 1988, the date for determining their entitlement to Homestead Exemption, and, accordingly, the Petitioners have satisfied the statutory requirement of legal or equitable ownership.

With regard to the Property Appraiser's contention that they did not

occupy the subject property as of January 1, 1988, Petitioners do not deny the same. Instead, they have attempted to show that they purchased the property with the *intention* of making same their permanent residence, that they were unable to occupy the property at the time of their purchase because of the condition of the property, and that they moved in as soon as the required repairs could be made. They further contend that, based upon these allegations, they should have been given Homestead Exemption by the Property Appraiser as a matter of law.

In support of their factual allegations, the Petitioners have submitted a well-drafted affidavit and supporting documents and, based upon same, as indicated by the Findings of Fact which appear above, the undersigned finds the underlying facts to be as presented by the Petitioners. The Petitioners' legal contentions, however, are more problematic. They have cited no statute, and no Florida Department of Revenue regulation or ruling to support their legal contentions. Petitioners have based their argument upon the case of *Semple v Semple*, 89 So. 638 (Fla. 1921), and the editorial reference to that case which appears in Florida Jurisprudence, Second Edition.

It is true that the headnote to the *Semple* case indicates that "homestead character" attaches to the property where the purchaser "openly avows" an intention of making the property his permanent home and proceeds to put the property in condition to be occupied. There are two problems, however, with the *Semple* case. First, a close reading of the actual case reveals that the Court did *not* find a "homestead" on the facts presented and it is not entirely clear from that case and therefore a matter of speculation as to what facts would establish a "homestead" under the principle alluded to but not actually applied in that case.

Secondly, and more importantly, *Semple* does not purport to be a construction of the operative statute, namely, Florida Statutes § 196.031; nor, is it even an *ad valorem* tax case. The "homestead" discussed in the *Semple* case is "homestead" for the purpose of descent and distribution and the underlying issue in the case was whether a conveyance issued by a husband to his wife was valid, given the possible "homestead" character of the property at the time the conveyance was made.

"Homestead Exemption" for the purpose of *ad valorem* taxation, of course, is a separate and distinct concept from "homestead" for the purpose of descent and distribution — and also, for that matter, from "homestead" for the purpose of exemption from forced sales. The

requirements for the separate concepts of "homestead" are simply not the same. Cases defining "homestead" for the purposes of descent and distribution have no validity with respect to determining Homestead Exemption for the purposes of *ad valorem* taxation. *Doing v Riley,* 176 F.2d 449 (5th Cir. 1949). See also, In Re: *Duque,* 33 B.R. 201 (S.D. Fla. 1983). The operating presumptions are also different. The laws providing for "homestead" for the purposes of exemption from forced sale and for descent and distribution, for example, are to be interpreted liberally in order to carry out the intended purpose of benefiting the family. *Hospital Associates of Florida, Inc. v McElroy,* 393 So.2d 25 (Fla. 3d DCA 1981); *Deem's Estate v Shinn,* 297 So.2d 611 (Fla. 4th DCA 1974). On the other hand, when a taxpayer claims to be exempt from taxation and, in essence, seeks to cast, at least in part, the burden of taxation upon others, the legal right to exemption must be clearly shown. *American Can Co. v City of Tampa,* 14 So.2d 203 (Fla. 1943). Persons claiming exemption from taxation have the burden of proving that they are within the "usual and obvious meaning of the constitutional or statutory provision which establishes the exemption." *Schooley v Judd,* 149 So.2d 587 (Fla. 2d DCA 1963).

The constitutional provisions which establish Homestead Exemption for *ad valorem* tax purposes are set out in Article VII, Section 6 of the *Florida Constitution* and are as follows:

(a) Every person who has the legal or equitable title to real estate and maintains thereon the permanent residence of the owner, or another legally or naturally dependent upon the owner, shall be exempt from taxation thereon, except assessments for special benefits, up to the assessed valuation of five thousand dollars, upon establishment of right thereto in the amount prescribed by law. The real estate may be held by legal or equitable title, by the entireties, jointly, in common, as a condominium, or indirectly by stock ownership or membership representing the owner's or member's proprietary interest in a corporation owning a fee or a leasehold initially in excess of ninety-eight years.

(b) Not more than one exemption shall be allowed any individual or family unit or with respect to any residential unit. No exemption shall exceed the value of the real estate assessable to the owner or, in case of ownership through stock or membership in a corporation, the value of the proportion which his interest in the corporation bears to the assessed value of the property.

(c) By general law and subject to conditions specified therein, the exemption may be increased up to an amount not exceeding ten

thousand dollars of the assessed value of the real estate if the owner has attained age sixty-five or is totally and permanently disabled.

The statutory provisions controlling Homestead Exemption for *ad valorem* tax purposes are set out in Florida Statutes § 196.031 and are as follows:

(1) Every person who has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his permanent residence, or the permanent residence of another or others legally or naturally dependent upon such person, is entitled to an exemption from all taxation, except for assessments for special benefits, up to the assessed valuation of $5,000 on the residence and contiguous real property, as defined in § 6 Art. VII of the State Constitution. Such title may be held by the entireties, jointly, or in common with others, and the exemption may be apportioned among such of the owners as shall reside thereon, as their respective interests shall appear; but no such exemption of more than $5,000 shall be allowed to any one person or on any one dwelling house, except that an exemption up to the assessed valuation of $5,000 may be allowed on each apartment occupied by a tenant-stockholder or member of a cooperative apartment corporation and on each condominium parcel occupied by its owner; nor shall the amount of the exemption allowed any person exceed the proportionate assessed valuation based on the interest owned by such person.

(2) As used in subsection (1), the term "cooperative apartment corporation" means a corporation, whether for profit or not for profit, organized for the purpose of owning, maintaining, and operating an apartment building or apartment buildings to be occupied by its stockholders or members; and the term "tenant-stockholder or member" means an individual who is entitled, solely by reason of his ownership of stock or membership in a cooperative apartment corporation, to occupy for dwelling purposes an apartment in a building owned by such corporation. A corporation leasing land for a term of 98 years or more for the purpose of maintaining and operating a cooperative apartment thereon shall be deemed the owner for purposes of this exemption.

(3)(a) For every person who is entitled to the exemption provided in subsection (1), who is a permanent resident of this state, and who is 65 years of age or older, the exemption is increased to $10,000 of assessed valuation for taxes levied by governing bodies of counties, municipalities, and special districts.

**89**

(b) For every person who is entitled to the exemption provided in subsection (1), who has been a permanent resident of this state for the 5 consecutive years prior to claiming the exemption under this subsection, and who qualifies for the exemption granted pursuant to § 196.202 as a totally and permanently disabled person, the exemption is increased to $9,500 of assessed valuation for taxes levied by governing bodies of counties, municipalities, and special districts.

(c) No homestead shall be exempted under both paragraphs (a) and (b). In no event shall the combined exemptions of § 196.202 and paragraph (a) or paragraph (b) exceed $10,000.

(d) For every person who is entitled to the exemption provided in subsection (1) and who is a permanent resident of this state, the exemption is increased to a total of $25,000 of assessed valuation for taxes levied by governing bodies of school districts.

(e) For every person who is entitled to the exemption provided in subsection (1) and who is a resident of this state, the exemption is increased to a total of $25,000 of assessed valuation for levies of taxing authorities other than school districts. However, the increase provided in this paragraph shall not apply with respect to the assessment roll of a county unless and until the roll of that county has been approved by the executor director pursuant to § 193.1142.

(4) The property appraisers of the various counties shall each year compile a list of taxable property and its value removed from the assessment rolls of each school district as a result of the excess of exempt value above that amount allowed for nonschool levies as provided in subsections (1) and (3), as well as a statement of the loss of tax revenue to each school district from levies other than the minimum financial effort required pursuant to § 236.02(6), and shall deliver a copy thereof to the Department of Revenue upon certification of the assessment roll to the tax collector.

(5) The exemption provided in this section applies only to those parcels classified and assessed as owner-occupied residential property or only to the portion of property so classified and assessed.

The date with respect to which entitlement to homestead exemption must be determined is January 1 of the tax year. *Gautier v Lapof,* 91 So.2d 324 (Fla. 1956); see also Opinion of Attorney General, 077-2 (1977). The operative statute, therefore, requires the taxpayer (1) to have legal or equitable ownership of the subject property, (2) to "reside" thereupon, and (3) to make the property his permanent residence in good faith, all as of January 1 of the tax year. An intention to make the subject property one's residence in the future,

coupled with acts of preparation of the property for such future occupancy, will not suffice. The statutory language, once again, restricts entitlement to homestead exemption to the taxpayer who "*makes* [the subject property] his permanent residence" *and* "who *resides* thereupon."

While it is true that actual and continuous physical occupancy is not required to sustain Homestead Exemption *once* residency has been established, (*Jackson v Bailey*, 30 So.2d 529 (Fla. 1947)), actual physical occupancy is essential to, and must initially precede, residence. It is hard, if not impossible, to envision how one "resides" on property before he ever eats or sleeps there. If there were any doubt that the use of the present tense of the verbs "to reside" and "to make" in Florida Statutes § 196.031(1) ("and who *resides* thereupon and in good faith *makes* the same his permanent residence") requires occupancy by the owner as of January 1 of the tax year, the matter would seem to be established beyond peradventure by the language of F. S. § 196.031(5) which, as indicated above, specifically restricts the granting of homestead exemptions to "owner-occupied residential property." See also Opinion of the Attorney General 079-50 (1979).

The only exception to the rule that requires initial physical occupancy by the taxpayer on or before January 1 of the tax year in order to qualify for Homestead Exemption is where such actual occupancy has been established by "another legally or naturally dependent upon" the taxpayer. See, F.S. § 196.031(1). The Petitioners, however, make no such claim.

Accordingly, taking all of the testimony and documentation presented by the Petitioners in the light most favorable to the Petitioners, the Petitioners have simply not shown that they "resided" on the premises as of January 1, 1988, within the "usual and obvious meaning" of that term. See, *Schooley v Judd, supra.*

What the Petitioners have shown by their skillful oral presentation and their subsequent and well-documented written submissions is that the Petitioners decided to postpone entering into occupancy, and therefore establishing residency, with respect to the subject property until a date after January 1, 1988, because of the condition of the property as it existed on that crucial date. The Petitioners' decision in this respect was not only reasonable but commendable in that the lack of electrical repairs as of January 1, 1988, may have presented a hazard to the Petitioners' family had they chosen to occupy the property at that time. It also appears that the Petitioners may have wanted to occupy the property on or before January 1, 1988, but were prevented

from doing so because of the failure on the part of the sellers to make repairs to the property. These observations, however, do not derogate from the fact that the tax assessment and the determination of tax exemption must be made as of January 1 of the tax year and based upon the facts as they exist at that time. If taxpayers do not qualify at that time, their lack of "fault" in failing to qualify is not relevant in proceedings before the Property Appraisal Adjustment Board to determine their purported entitlement to tax exemptions.

## RECOMMENDATIONS

The taxpayers' representative has presented this matter ably and has submitted a well-prepared and well-documented post-hearing brief; nevertheless, for the reasons which appear above, the undersigned concludes that there is no lawful basis upon which to reverse the denial of the Homestead Exemption for the year 1988 as determined by the Property Appraiser. It therefore is

RECOMMENDED:

1. That the Property Appraiser's denial of Homestead Exemption for the subject property for 1988 be affirmed.

2. That the taxpayers' Petition for review of denial of Homestead Exemption be denied.

3. That the taxable portion of the assessment for the subject property be finally established for the year 1988 in the same amount as the assessment; and that the non-taxable portion be finally established at zero.

DONE at Miami, Dade County, Florida, this 18th day of January, 1989.