**In re Paul BERTOLAMI, Debtor.**

**Bankruptcy No. 98–29239–BKC–PGH**

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

June 23, 1999.

**494**

Robert J. Bigge, Jr., Ft. Lauderdale, FL, for debtor.

Robin Weiner, Ft. Lauderdale, FL, Trustee.

### AMENDED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY

PAUL HYMAN, Jr., Bankruptcy Judge.

**THIS MATTER** came before the Court on March 18, 1999, upon Paul Bertolami's ("Debtor") Motion for Sanctions for Violation of Automatic Stay (the "Motion"). A hearing on the Motion was held on May 10, 1999. Subsequently, on May 20, 1999, the parties filed a Joint Stipulation of Facts. After considering the Motion, arguments of counsel at hearing, and the Joint Stipulation of Facts, and being otherwise fully advised in the premises, the Court entered Findings of Fact, Conclusions of Law, And Order Granting Debtor's Motion For Sanctions For Violation of Automatic Stay on June 7, 1999. On June 16, 1999, SouthTrust Bank, N.A. ("SouthTrust") filed a Motion to Amend and Motion for Rehearing on the Court's Findings of Fact, Conclusions of Law, and Order Granting Debtor's Motion for Sanctions for Violation of Stay entered on June 7, 1999 (the "Motion to Amend and Motion for Rehearing"). The Court, having considered the Motion to Amend and Motion for Rehearing and being otherwise fully advised in the premises, hereby enters the following Amended Findings of Fact, Conclusions of Law, and Order.

### FINDINGS OF FACT

On December 27, 1993, Charter Bank, now known as SouthTrust Bank, N.A. ("SouthTrust") gave a construction loan to Bert Builders, Inc. for a property described as follows:

Lot 24, Block A, of THE LANDINGS OF PARKLAND, according to the Plat thereof, as recorded in Plat Book 137, Page 22, of the Public Records of Broward County, Florida. Street address: 10151 NW 59th Court, Parkland, Florida 33076 (hereinafter "The Subject Property").

Bert Builders, Inc. was a Florida corporation owned and operated by Debtor. On August 11, 1995, Debtor and Angie Bertolami, as husband and wife (together, the "Bertolamis"), executed a note and residential mortgage to CHARTER BANK and satisfied the construction mortgage. Bert Builders, Inc. deeded the property to the Bertolamis. The mortgage amount was $360,000.00 and the property was, initially, occupied by the Bertolamis as their homestead.

Sometime in late 1995 or early 1996, the Bertolamis entered into an Agreement for Deed with Bernard Butler and Maxine Butler (together, the "Butlers") concerning the Subject Property. In late 1995 or early 1996, the Bertolamis moved to 11916 NW 9th Street in Coral Springs and lived there until 1997. In 1997, the Bertolamis moved to 11560 NW 23rd Street which they now claim as their homestead. On May 7, 1997, SouthTrust mailed the Bertolamis notice that the loan was in default. On July 17, 1997, the Bertolamis filed a foreclosure action against the Butlers related to the Subject Property.

On or about September 29, 1997, SouthTrust filed suit to foreclose on the Subject Property (case number 97–15094). On January 20, 1998, Final Judgment of Foreclosure was entered with a sale date of February 23, 1998. SouthTrust was the prevailing bidder and so the certificate of title was issued to SouthTrust on March 6, 1998. On December 10, 1998, SouthTrust

filed a Motion for Deficiency against the Bertolamis.

On December 24, 1998 (the "Petition Date"), Debtor, individually, filed a petition under Chapter 13 of the Bankruptcy Code. In paragraph 5 of Debtor's Statement of Financial Affairs filed on January 6, 1999, the foreclosure of the Subject Property was referred to as "foreclosure of rental property."

On February 23, 1999, SouthTrust filed an Amended Motion for Deficiency as to Angie Bertolami, only. On March 11, 1999, SouthTrust obtained a deficiency judgment against Angie Bertolami.

On March 18, 1999, Debtor filed a Motion for Sanctions for Violation of the Automatic Stay asserting that Angie Bertolami, as Debtor's spouse, was afforded stay relief as to the Subject Property.

### CONCLUSIONS OF LAW

■ Section 1301 of the Bankruptcy Code, titled "Stay of action against codebtor," provides that

> after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a *consumer debt* of the debtor from any individual that is liable on such debt with the debtor, or that secured debt, unless—(1) such individual became liable on or secured such debt in the ordinary course of such individual's business; or (2) the case is closed, dismissed, or converted to a case under chapter 7 or 11 of this title.

11 U.S.C. § 1301(a) (emphasis added). Section 101(8) of the Bankruptcy Code defines "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose[.]" 11 U.S.C. § 101(8). Therefore, pursuant to these two provisions, when a debtor files a petition under Chapter 13 of the Bankruptcy Code, a creditor is prohibited from collecting a debt incurred for personal, family, or household purposes from the debtor or

someone (a codebtor) liable on such debt with the debtor.

■ First of all, it is undisputed in the instant case that Angie Bertolami is a codebtor with respect to the note and residential mortgage on the Subject Property. She is liable on the note and mortgage with Debtor. Therefore, if this Court finds the note and mortgage to be consumer debt, SouthTrust, as mortgagee, was prohibited from seeking a deficiency judgment against codebtor Angie Bertolami after the Petition Date pursuant to § 1301(a). *See Harris v. Margaretten & Company, Inc. (In re Harris),* 203 B.R. 46, 49–50 (Bankr.E.D.Va.1994). Because SouthTrust did seek a deficiency judgment against Angie Bertolami, if this Court finds the note and mortgage to be consumer debt, SouthTrust will have violated § 1301(a), SouthTrust's action for a deficiency judgment may be held void, and SouthTrust may be subject to sanctions. *See id.* at 50. The issue before the Court, therefore, is whether the note and mortgage on the Subject Property is consumer debt for purposes of § 1301(a).

■ Despite § 101(8)'s general definition of "consumer debt," Senator DeConcini and Representative Edwards both stated in the Congressional Record that "consumer debt does not include a debt to any extent the debt is secured by real property." 124 Cong.Rec. H11090 (daily ed. Sept. 28, 1978); S17406 (daily ed. Oct. 6, 1978). Several bankruptcy courts in accordance with the legislative history adopted the position that debts secured by real property are not consumer debts. *See, e.g., In re Ikeda,* 37 B.R. 193, 194–94 (Bankr.D.Hawai'i 1984); *Brunswick Employees Credit Union v. Nenninger (In re Nenninger),* 32 B.R. 624, 626 (Bankr. W.D.Wis.1983); *Gibbs v. Randolph (In re Randolph),* 28 B.R. 811, 813 (Bankr. E.D.Va.1983); *In re Stein,* 18 B.R. 768, 769 (Bankr.S.D.Ohio 1982). The Ninth Circuit and a number of Bankruptcy Courts held to the contrary that debts incurred to purchase a home or secured

by real estate qualify as consumer debts. *See Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir.1988); *In re Zersen*, 189 B.R. 732 (Bankr.W.D.Wis.1995); *In re Gentri*, 185 B.R. 368 (Bankr.M.D.Fla. 1995); *In re Harris*, 203 B.R. 46 (Bankr. E.D.Va.1994); *In re Whitelock*, 122 B.R. 582 (Bankr.D.Utah 1990); *In re Palmer*, 117 B.R. 443 (Bankr.N.D.Iowa 1990); *In re Johnson*, 115 B.R. 159 (Bankr.S.D.Ill. 1990); *In re Wegner*, 91 B.R. 854 (Bankr. D.Minn.1988); *In re Gaskins*, 85 B.R. 846 (Bankr.C.D.Cal.1988); *In re Gunderson*, 76 B.R. 167 (Bankr.D.Or.1987); *In re Panaia*, 65 B.R. 865, 869 (Bankr.D.Mass. 1986); *In re Bryant*, 47 B.R. 21, 23, 26 (Bankr.W.D.N.C.1984); *Bank of Columbia Falls v. Burgess (in re Burgess)*, 22 B.R. 771 (Bankr.M.D.Tenn.1982). Notwithstanding the Congressional Record Statements, this Court adopts the contrary position in accord with the Ninth Circuit and this latter line of cases. The Ninth Circuit, in *Kelly*, 841 F.2d at 912, stated that when interpreting a statute, the actual language of the provision must be considered before resorting to legislative statements and history. The Supreme Court noted that "legislative history, . . . by traditional canons of interpretation[,] is irrelevant to an unambiguous statute." *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 199, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The *Kelly* Court opined that it is inappropriate to refer to legislative history when the statutory language is clear and precise. *See Kelly*, 841 F.2d at 912.

After finding the language of § 101(8) to be clear and unambiguous, the Court in *Kelly* determined that Congress intended that debts secured by real property be included in the definition of "consumer debt" notwithstanding the legislative history. The court explained that

> section 524 of the Code explicitly recognizes that consumer debt may be secured by real property, making different provisions for the reaffirmation of consumer debt depending on whether or not it is "consumer debt secured by real

property." The statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion.

*Id.* (citing 11 U.S.C. §§ 524(c)(6)(B) and (d)(2) and 4 Collier on Bankruptcy ¶ 707.06, at 707–16 (15th ed.1987)). In a footnote, the *Kelly* Court stated:

> [t]o the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent. The committee reports on the 1978 Act make no reference to the supposed exclusion of debt secured by real property from the definition of consumer debt. Stray comments by individual legislators, not otherwise supported by statutory language or committee reports, cannot be attributed to the full body that voted on the bill. The opposite inference is far more likely.

*Id.* at 912 n. 3 (citing *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984); *Zuber v. Allen*, 396 U.S. 168, 186, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); S.Rep. No. 989, 95th Cong., 2d Sess. 22 (1978), U.S.Code Cong. & Amin. News pp. 5787, 5808; H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), U.S.Code Cong. & Admin. News pp. 5963, 6266).

■ In accordance with the *Kelly* Court's findings and reasoning, this Court will look to the clear and unambiguous language of § 101(8) instead of the Congressional Record Statements of Senator DeConcini and Representative Edwards pertaining thereto. Section 101(8) does not exclude debt secured by real property or a residential mortgage from the definition of consumer debt. Rather, it defines consumer debt as "debt incurred . . . for a personal, family, or household purpose." This Court interprets § 101(8) to mean ***all debt*** incurred for such purposes, rather than all debt except debt secured by real property. Furthermore, as the *Kelly* Court suggested, the language of § 542(d)(2) reveals that consumer debt

may include debt secured by real property. Therefore, pursuant to the language of at least two provisions of the Bankruptcy Code, the Court finds that a note and residential mortgage may be consumer debt if they were executed primarily for personal, family, or household purposes.

The Court must therefore determine in the instant case whether the Bartolamis executed the note and residential mortgage primarily for personal, family, or household purposes. The Fifth Circuit, in *In re Booth*, 858 F.2d 1051 (5th Cir.1988), held that "the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit." *Booth*, 858 F.2d at 1055. The *Booth* Court found that when a "credit transaction involves a profit motive, it is outside the definition of consumer credit." *Id.* at 1054–55. *Accord In re Bell*, 65 B.R. 575 (Bankr.E.D.Mich.1986). The Fourth Circuit adopted a similar test. *See Cypher Chiropractic Ctr. v. Runski (In re Runski)*, 102 F.3d 744 (4th Cir.1996) (holding that to determine if property is intended primarily for personal use, a court must ascertain whether the individual holds the property for business purposes or with a profit motive); *accord Panaia*, 65 B.R. at 869 (holding that "debts incurred on real property for business purposes cannot be consumer debts").

■■■ SouthTrust argues that although the Bartolamis executed the note and residential mortgage with the intention of using the Subject Property as their home (a personal, family or household purpose), the Subject Property ceased to be their home approximately three years prior to the Petition Date when the Bartolamis entered into the Agreement for Deed with the Butlers. Furthermore, SouthTrust asserts that because Debtor listed the Subject Property as "rental income property" and listed his residence as of the Petition Date as his homestead, the Subject Property is business or investment property rather than personal, family or household property. SouthTrust therefore contends that the note and residential mortgage on the Subject Property is not consumer debt under § 101(8). The Court disagrees. Section 101(8) defines "consumer debt" as "debt *incurred* ... primarily for a personal, family, or household purpose[.]" 11 U.S.C. § 101(8) (emphasis added). So, if the Bartolamis executed the note and residential mortgage with the intention of making the Subject Property their homestead, which SouthTrust must concede to, the Bartolamis *incurred* that debt primarily for personal, family, or household purposes.[1] As such, the note and residential mortgage is a consumer debt under § 101(8). The fact that the Bartolamis no longer reside at Subject Property and no longer consider it to be their homestead does not change the circumstances under which that debt was originally *incurred*. Therefore, even if the Bartolamis, as of the Petition Date, utilized the Subject Property as business or investment property with "an eye toward profit," the debt secured by that property can still be consumer debt under § 101(8). Applying the plain meaning of that provision, the Court finds that the note and residential mortgage on the Subject Property is consumer debt. Although it may seem inequitable to find debts originally incurred for personal, fam-

---

1. To determine if property qualifies as homestead, this Court has suggested that courts "focus on the debtor's intent to make the property his homestead and the debtor's actual use of the property as his principal and primary residence." *In re Dean*, 177 B.R. 727, 729 (Bankr.S.D.Fla.1995). The Middle District has concurred: "Homestead status is established by the actual intention to live permanently in a place coupled with actual use and occupancy." *In re Frederick*, 183 B.R. 968, 970–71 (Bankr.M.D.Fla.1995) (citing *In re Brown*, 165 B.R. 512, 514 (Bankr. M.D.Fla.1994)). The Florida Supreme Court has held that "intent to establish a homestead is evidenced by a debtor's specific acts toward creating a permanent abode which are not contradicted by subsequent behavior of the debtor." *Id.* at 971 (citing *Semple v. Semple*, 82 Fla. 138, 89 So. 638 (1921)).

ily, or household purposes but later used for business purposes to be consumer debts, "Bankruptcy judges have no more power than any others to ignore the plain language of a statute in order to reach a result more in keeping with their notions of equity." *Kelly*, 841 F.2d at 913 n. 4 (citing *In re Shoreline Concrete Co.*, 831 F.2d 903, 905 (9th Cir.1987)).

Because the note and mortgage on the Subject Property is consumer debt under § 101(8), SouthTrust was prohibited by § 1301(a)'s codebtor stay from seeking a deficiency judgment against codebtor Angie Bertolami. Therefore, SouthTrust may not pursue its deficiency judgment in State Court in Case no: 97–08037 CACE 21, styled as *SouthTrust Bank, N.A., f/k/a Charter Bank, v. Bert Builders, Inc.; Paul R. Bertolami; et. al.* Accordingly, the Court grants Debtor's Motion for Sanctions for Violation of Automatic Stay.

### ORDER

In light of the foregoing analysis, the Court, being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** as follows:

1. The Bertolami's note and residential mortgage on the Subject Property is consumer debt under 11 U.S.C. § 101(8) because the note and residential mortgage secured a "debt incurred ... primarily for a personal, family, or household purpose[.]"

2. SouthTrust violated the codebtor stay of 11 U.S.C. § 1301(a) when it sought a deficiency judgment in State Court against Angie Bertolami after the Petition Date.

3. Pursuant to the codebtor stay of 11 U.S.C. § 1301(a), SouthTrust is enjoined from pursuing a deficiency judgment in State Court in Case no: 97–08037 CACE 21, styled as *SouthTrust Bank, N.A., f/k/a Charter Bank, v. Bert Builders, Inc.; Paul R. Bertolami; et al.*

4. Debtor's Motion for Sanctions for Violation of Automatic Stay is GRANTED.

5. The Court reserves jurisdiction to award compensatory damages, fees, and costs to Debtor for SouthTrust's violation of the codebtor stay of 11 U.S.C. § 1301(a).

**DONE AND ORDERED.**