**Peter R. WECHSLER, Plaintiff,**

v.

**Barry J. CARRINGTON, Defendant.**

No. 01–5143–CV.

United States District Court,
S.D. Florida.

Aug. 1, 2002.

Mark D. Balzli, Miami Beach, FL, for Plaintiff.

Theodore R. Dempster, Ft. Lauderdale, FL, for Defendant.

### ORDER DENYING MOTION TO CANCEL OR STAY SALE OF REAL PROPERTY

GOLD, District Judge.

**THIS CAUSE** is before the court upon defendant Barry Carrington's motion to cancel or stay the sale of real property (DE # 7). The defendant's motion follows this court's entry of an order approving the sale of the defendant's condominium in order to satisfy a default judgment entered in a Pennsylvania district court. According to the defendant, that order must be vacated and the sale of his condominium must be canceled because the property is protected as a homestead under Florida law. The court held a hearing on this matter on June 20, 2002, during which the parties presented evidence and legal arguments. Following the hearing, the parties submitted additional briefing on the issue of whether the condominium qualifies as a homestead under Florida law. Upon considering the evidence, the parties' arguments, and the applicable case law, the court finds that the condominium was not the defendant's homestead during the relevant time period. Accordingly, the defendant's motion to cancel or stay the sale of the property must be denied.

### Facts and Procedural History[1]

### I. The Pennsylvania Judgment and Proceedings in This Court

On November 21, 2001, a Pennsylvania district court entered a judgment against the defendant, following his nonappearance and default. The Pennsylvania case was initiated by plaintiff Peter Wechsler's verified complaint, which alleged that the defendant had misappropriated the plaintiff's money by transferring $110,000.00 from the parties' joint account to the defendant's personal account. The defendant subsequently used these funds to purchase a condominium at The Courts of South Beach, 120 Jefferson Avenue, Miami Beach, Florida.

The plaintiff recorded the Pennsylvania default judgment in Miami–Dade County, Florida, on December 4, 2001. On December 26, 2001, the plaintiff transferred the Pennsylvania judgment to this court. Following the issuance of a writ of execution on January 30, 2002, and the defendant's nonappearance in this court, the plaintiff filed a motion for the sale of the defendant's condominium at The Courts in order to collect on the Pennsylvania judgment. This court granted the plaintiff's motion on April 29, 2002.

On May 9, 2002, the defendant appeared in the Pennsylvania court and filed a motion for relief from that court's judgment. The Pennsylvania district court has scheduled a hearing on that motion for August 16, 2002.

On May 29, 2002, the defendant appeared in this case and filed the instant motion to cancel or stay the sale of his condominium. The plaintiff has filed a timely response in opposition to the defendant's motion in which he argues that the defendant is not entitled to Florida's homestead protection because the condominium was not the defendant's homestead at the time the Pennsylvania judgment was recorded in Florida.

### II. Facts Relevant to Issue of Homestead Exemption

The evidence presented during the evidentiary hearing establishes the following

---

1. The following facts are derived from the testimony and evidence that were presented during the hearing of June 20, 2002. The procedural history is derived from the parties' briefs and the court's record.

sequence of events. The defendant moved to Miami Beach from Pennsylvania sometime in January of 2001. On January 25, 2001, the defendant entered into a one-year lease for an apartment at The Floridian, a building located at 650 West Avenue, Miami Beach, Florida. On August 30, 2001, the defendant allegedly misappropriated the plaintiff's money by transferring $110,00.00 from their joint bank account to his personal account. The defendant applied for a residential mortgage and purchased a condominium at The Courts on the following day.

On August 31, 2001, the same day he purchased the condominium at The Courts, the defendant submitted a note to the property manager at The Floridian, indicating his intent to abandon the lease of the apartment in order to move to The Courts by October 31, 2001. The defendant changed his mind on or about September 5, 2001, when he rescinded his notice of cancellation by delivering another note to The Floridian, declaring his intent to remain at the Floridian through his lease term, which expired on January 31, 2002. Both of these notes were admitted as exhibits during the evidentiary hearing.

According to the defendant, he made an economically-based decision to rescind the cancellation of the lease because he would not save much rent by breaking the lease at The Floridian in order to move to The Courts prior to January 31, 2002. The evidence submitted during the hearing, however, contradicts this testimony, as exercising early termination of the lease at the Floridian would have saved the defendant one month of rent, which was $2,180.00, plus parking fees. It is important to note that the defendant continued to rent a second parking space at The Floridian at an additional cost to him, despite his contention that he did not spend a significant amount of time at that building.

Finally, the defendant's alleged motivation for rescinding his original notice is further undermined by the fact that he did not officially move out of the Floridian until February 4, 2002, four days beyond the lease term. On this day, the defendant hired a moving company to move some of his belongings from The Floridian to The Courts. It is undisputed that, by remaining at The Floridian for these additional days, the defendant incurred a monetary penalty.

The plaintiff submitted the defendant's driver's license as an exhibit during the evidentiary hearing. The defendant obtained this license and a voter's registration on October 25, 2001. Although he already had purchased the condominium at The Courts at least two months earlier, the defendant provided his address at The Floridian as his home address for his license and voter's registration. The defendant did not change his address on these documents to that of The Courts until January 31, 2002.

The defendant maintained two telephone lines and a cable modem at the Floridian. One telephone line was to receive faxes, and the cable modem was for the computer. The defendant did not establish telephone service at The Courts until January 8, 2002.

On December 7, 2001, the defendant opened two accounts at SunTrust bank, and he provided his address as that of The Floridian. According to the defendant, he asked the bank to change this address on numerous occasions; however, the record also reveals that the defendant did not provide The Courts address in the space labeled "other addresses" in the bank account application.

During the hearing, the plaintiff submitted into evidence a postal form that was completed by the defendant. The form indicated to the post office that the defen-

dant would be changing his residence from The Floridian to The Courts. It was completed on January 9, 2002, and was to become effective on January 20, 2002.

The evidence presented during the hearing established that the defendant had ten dinner guests at the Floridian (or dinner guests on ten occasions) between December 3, 2001, and January 6, 2002. Additionally, the defendant hosted a New Year's Eve party at The Floridian apartment on December 31, 2001. Sandra Roldan, the property manager at The Courts, testified that the visitors log for the complex revealed that the defendant did not have any visitors at The Courts between November and December of 2001. In January and February of 2002, the defendant had a total of twenty-two visits. The call log also revealed that movers brought some of the defendant's property into The Courts condominium in September of 2001,[2] and a cable company visited the defendant's condominium in October of 2001.

The plaintiff submitted two other items into evidence, which he claims were indicative of the defendant's residence at The Floridian during the relevant time period. First, the plaintiff showed that the defendant was personally served with summons and a complaint in a related action at The Floridian on December 17, 2002, at 12:05 p.m. Second, the defendant did not apply for a homestead exemption for the property at The Courts until January 2, 2002, a few days after the Pennsylvania judgment had been registered in this court.

### Analysis

■ The right to claim one's homestead exempt from levy arises from article X,

section 4 of the Florida constitution, which states, "There shall be exempt from forced sale under process of any court, and no judgment decree or execution shall be a lien thereon ... the following property owned by a natural person: (1) a homestead...."[3] The burden is on the party objecting to the establishment of the homestead to show that the property in question is not exempt. *See In re Lee*, 223 B.R. 594, 599 (Bankr.M.D.Fla.1998). In this case, the burden lies with the plaintiff to show that The Courts condominium is not subject to homestead protection under Florida law.

In order to qualify his or her property with homestead status, the party seeking the protection of the exemption must have an actual intent to live permanently on the property *and* actual use and occupancy of the property. *See Edward Leasing Co. v. Uhlig*, 652 F.Supp. 1409, 1412 (S.D.Fla. 1987) (citing Florida law); *Hillsborough Investment Co. v. Wilcox*, 152 Fla. 889, 13 So.2d 448, 450 (1943). The mere intent to make the property one's homestead in the future is legally insufficient to entitle a person to constitutional homestead exemption. *See State v. Pelsey*, 779 So.2d 629, 632 (Fla. 1st DCA 2001) (stating that mortgaged property where defendant intended to reside once repairs were completed could not constitute homestead).

If a judgment is recorded prior to the time the debtor has established a homestead, the homestead property is subject to levy under Florida law. *See Bessemer v. Gersten*, 381 So.2d 1344, 1347 n. 1 (Fla. 1980); *Aetna Ins. Co. v. LaGasse*, 223 So.2d 727, 728 (Fla.1969); *Kirkland v. Kirkland*, 253 So.2d 728, 730 (Fla. 3d DCA 1971). As a result, preexisting liens are

---

**2.** It is undisputed that the defendant began to move some of his belongings into The Courts condominium as early as September of 2001.

**3.** It is undisputed, and the court agrees, that the determination of whether the defendant's property is subject to the homestead exemption is governed by Florida law.

excepted from Florida's homestead exception.

■ The lien in this case arose on December 4, 2001, when the plaintiff recorded the Pennsylvania district court judgment in Miami–Dade County. This means that the defendant cannot claim homestead protection if The Courts condominium became his homestead after December 4, 2001. A review of the evidence submitted by the plaintiff, however, overwhelmingly establishes that the defendant did not have an intent to permanently reside and did not actually use and occupy The Courts until after the plaintiff recorded the Pennsylvania judgment in Miami–Dade County.

In support of his argument that The Courts condominium qualifies as his homestead, the defendant relies primarily on *Semple v. Semple*, 82 Fla. 138, 89 So. 638 (1921), where the Florida Supreme Court stated that a residence where a party does not yet live but which is being prepared by the party for use as a home can qualify as a homestead. *Id.* at 638. The defendant overlooks highly relevant language from *Semple*, which goes to the crux of this case:

Where it is clearly the manifest intention of the owner to occupy the premises *immediately* as a home, and this intention is evidenced by specific acts and doings that *are not compatible with a different intention and there is nothing by the claimant showing a different intention, or that is inconsistent,* with the asserted intention to make the place his homestead, the homestead character will attach.

The intention of a person is a difficult matter to establish, and can only reliably be shown by circumstances and acts in support of expressions of intention.

*Id.* at 639 (emphasis added) [4]; *see also In re Bertolami*, 235 B.R. 493, 498 n. 1 (Bkrtcy.S.D.Fla.1999) (quoting *Semple*); *Smith v. Hamilton*, 428 So.2d 382, 384 (Fla. 4th DCA 1983) ("The *Semple* decision went on to hold that any inference of homestead status in unoccupied land being prepared for occupancy may be destroyed by acts of the owner contrary to any homestead intent.").

*Semple*, which continues to be cited with approval by Florida courts, instructs that an owner attempting to establish a homestead must intend to occupy the property immediately and must not manifest any actions that are incompatible with an intent to make the property his homestead. The plaintiff in this case has shown that the defendant did not possess such an intent. Although the defendant moved some of his belongings into that property and spent some of his nights at that residence, the evidence shows that the defendant continued to live at The Floridian. That is, the defendant effectively kept two residences. Because an individual may only have one homestead, the defendant must have had an intent to reside permanently at either The Floridian or The Courts, but not at both. *See Law v. Law*, 738 So.2d 522, 525 (Fla. 4th DCA 1999) (stating that parties cannot have two homesteads).

The totality of the circumstances indicates that the defendant did not immediately occupy the condominium at The Courts. One of the strongest indicators of this fact is the defendant's occupation of The Floridian until February 4, 2002, four days beyond the expiration of the lease term and more than five months after he

---

**4.** In *Semple,* the Florida supreme court went on to hold that the plaintiff did not have the intention to establish a homestead where he executed a deed of conveyance of the property to his wife. *Id.* at 640.

purchased The Courts condominium. The defendant's contention that he occupied The Floridian only in order to save money is undermined by the record. The defendant could have saved one month's rent, or $2,180.00, and the expense of an additional parking space if he had terminated the lease when he purchased the Condominium. Additionally, the defendant was penalized economically for holding over beyond the expiration of the lease term.

The plaintiff also has introduced evidence of specific acts that are contrary to an intent by the defendant to reside permanently at The Courts. This evidence is as follows:

a. The defendant rescinded his notice to The Floridian's management, which informed them that he intended to terminate his lease early.

b. The defendant actually remained at the Floridian until February 4, 2002, four days beyond the expiration of his lease term, and he incurred a penalty for holding over.

c. The defendant's driver's license and voter registration, which he obtained on October 25, 2001, two months after purchasing The Courts property, indicated that his home address was The Floridian. The defendant did not change this information until January 31, 2002. *See In re Dean,* 177 B.R. 727, 729 (Bkrtcy.S.D.Fla. 1995) (finding that property qualified as party's homestead where, among other factors, driver's license and voter registration listed property as primary residence); *In re Brink,* 162 B.R. 355 (Bkrtcy.M.D.Fla. 1993) (finding that banking and other documents expressed party's abandonment of homestead).

d. On December 7, 2001, the defendant opened a bank account listing The Floridian as his address, and he did not list The Courts in the space available for other addresses.

e. The defendant was served with process in a related action at The Floridian on December 17, 2001.

f. The defendant maintained two parking spaces, one at an additional cost, at The Floridian until February 4, 2002.

g. The defendant entertained on several occasions at The Floridian until January 30, 2002, and he hosted a New Year's Eve party at The Floridian.

h. The defendant did not install telephone lines in The Courts until January of 2002.

i. On January 9, 2002, the defendant submitted a change of address form with the post office in order to change his mailing address from The Floridian to the Courts. The form was to take effect on January 20, 2002.

j. A representative from The Courts testified that the plaintiff did not receive any visitors during November and December of 2001, but he received a total of twenty-two guests in January and February of 2002.

k. The defendant did not complete his homestead exemption form until January of 2002, after the plaintiff recorded the lien in Miami–Dade County.

All of this proof overwhelms the evidence submitted by the defendant in support of his contention that he had moved into and intended to reside permanently at The Courts prior to December 4, 2002. The plaintiff established that he began to move furniture into The Courts by September of 2001 and that he spent a few nights of the week in that condominium. Even the act of moving furniture into The Courts as a manifestation of an intent to make that property a homestead is undermined by the record. The defendant testi-

**1354**

fied that this was done, in part, to avoid paying the costs of a storage facility for the furniture he shipped to Miami from Pennsylvania. An intent to save costs does not equate to an intent to reside immediately at the condominium.

In sum, the record establishes that the defendant did not intend to live permanently at The Courts prior to December 4, 2001. Although the defendant did use and occupy that property, this was done on a part-time basis at best. The defendant's decision to stay at The Floridian until the expiration of the lease was not indicative of an intent to make The Courts his residence immediately upon purchasing the condominium because the evidence shows that the defendant continued to treat of The Floridian as his residence from August 31, 2002, when he purchased The Courts condominium, until after December 4, 2001. *Compare In re Krueger,* 90 B.R. 553 (Bkrtcy.S.D.Fla.1988) (holding that property purchased by party was homestead, notwithstanding fact that parties lived in rented apartment for three nights between closing and permanent occupancy of property, during which they cleaned and fixed property). This is established by the defendant's driver's license, voter registration, postal change in address form, decision to entertain guests at The Floridian, and banking information. Because the evidence shows that the defendant did not intend to live permanently at The Courts during the relevant time period, he cannot claim that property as his homestead under Florida law. Accordingly, it is hereby:

**ORDERED AND ADJUDGED THAT** the defendant's motion to cancel or stay sale of real property (DE # 7) is DENIED.